P. J. LIEUWEN Appellee, v. CHARLES KLINE, Appellant.

**Agency:** COMMISSION CONTRACT: PERFORMANCE: EVIDENCE. An agent
1 who claims a commission for furnishing a buyer for land, where
no sale is in fact made, must show a strict compliance with his
commission contract: so that where *the contract was to furnish
a purchaser at a stated price the fact that the owner offered to
reduce the price, which offer was later withdrawn prior to ac-
ceptance, the agent was not entitled to a commission, there being
no showing that the owner was under obligation to keep the
offer good for any specified time. Evidence held insufficient to
show conclusively that the agent had complied with his contract.*

**Good faith of offer to purchase:** EVIDENCE. The testimony of a
2 prospective purchaser that he was ready, willing and able to buy
is not conclusive on the subject, but his circumstances may be
considered as bearing on the good faith of his offer.

*Appeal from Wright District Court.*—HON. C. G. LEE,
Judge.

THURSDAY, MARCH 18, 1909.

THIS is an action by plaintiff, a real estate agent, to
recover a commission. At the close of the evidence there
was a directed verdict in his favor. The defendant ap-
peals.—*Reversed.*

*McGrath & Archerd* and *E. P. Ripley,* for appellant.

*Nagle & Nagle* and *W. E. Bullard,* for appellee.

EVANS, C. J.—While there is a conflict in the evidence
of the plaintiff and the defendant, the controlling facts are
not greatly in dispute. Defendant was the owner of a
farm of two hundred and twenty-two acres, which he de-

sired to sell.  The plaintiff was a real estate agent.  In the spring or summer of 1907 the defendant listed his farm with the plaintiff at $80 per acre, and agreed to pay plaintiff $1 per acre commission for a buyer at such price.  In the following October the plaintiff brought to the defendant a prospective customer, one Norem, to whom the defendant reduced his price to $77 per acre.  Norem was not ready to buy on that day.  According to Norem's testimony he said when he went away: "If you will give me an option of a week or ten days, I will come back again."  He said: "That is all right.  You can have a week or ten days, or longer."  Defendant's testimony at this point is: "When he went away, he said he would let me know in a week or ten days.  To this I said, 'All right.'"  On the day following this negotiation with Norem, plaintiff telephoned to the defendant that he was about to bring out another customer, who is referred to in this record as the "Illinois man."  He advised the defendant to put up his price to $82.50 per acre, to which the defendant assented. Plaintiff brought the Illinois man out to see the defendant's farm, and the defendant priced it to him in accordance with the suggestion of the plaintiff.  The Illinois man did not buy, but when he went away the defendant said to him: "I would like to hear from you."  He said: "Yes; you will hear from us."  Two days later the defendant saw the plaintiff in town.  The plaintiff said to him that Norem wanted to get the land for $76.  This suggestion was rejected by the defendant.  He testifies also as to his conversation with the plaintiff at this point as follows: "I said, 'Wait, we will hold Norem off until we can hear from the Illinois fellow.'"  A day or two later the plaintiff nevertheless went to the home of the defendant with Mr. Norem to close the deal.  Plaintiff testifies as follows concerning that: "I walked up to Mr. Kline and told him we were ready to do business, and that Mr. Norem was there, and Mr. Kline told me he wanted $80 per acre.  .  .  .  After

that Mr. Norem came up and he (Kline) wouldn't do anything, and we went home." In the foregoing statement we have followed the evidence most favorable to the defendant, as is our duty to do, for the purpose of this appeal. Upon this• state of the evidence the trial court directed a verdict for the plaintiff.

I. It is undisputed that the original contract between the parties contemplated a price at $80 per acre. Defendant could not be required to modify his contract, nor to accept a purchaser at a less price. Nevertheless he could recede from his price, and could accept a purchaser for a less price. That is what he offered to do with Norem at the time of his first interview. It may be conceded that if Norem had then taken the property at the reduced price, the defendant would have been liable to the plaintiff for his commission. The question presented at this point is whether there was anything in the conversation on that day which bound the defendant to adhere to the reduced price. Norem proposed to take a week or ten days to consider the matter. To this the defendant assented. Such talk, however, was not a contract in any sense. It amounted only to an offer on the part of the defendant. He had a legal right to withdraw it at any time before it was accepted. It must be borne in mind, also, that the plaintiff was agent for the defendant. The defendant had the absolute right to terminate his agency at any time before a purchaser was secured. Even though he offered to sell to Norem for $77 per acre, there was nothing in his contract with the plaintiff that bound him to adhere to such reduced price. It is manifest that both parties put this construction upon their mutual rights. The subsequent conduct of the plaintiff shows that he did not regard the defendant as in any manner bound by the price or offer he had made to Norem. The plaintiff himself brought the Illinois customer to defendant on the following day, and advised that the price

*1. AGENCY:
commission
contract:
performance:
evidence.*

be raised, which was done. Both the plaintiff and defend-
ant deemed the defendant as within his rights in offering.
to sell to the Illinois man. Later, when plaintiff in effect
offered the defendant $76 on behalf of Norem, he was
told to "Wait; we will hold Norem off until we hear
from the Illinois man." Instead, however, of following
the wishes of his principal, the plaintiff brought Norem
again to the defendant's farm. According to his testimony
he first had an interview with the defendant, and was then
told by the defendant that he would not renew the $77
offer. There is no question but that the defendant acted
in good faith, and that he was not acting arbitrarily, and
for the mere purpose of defeating the plaintiff's right to a
commission. He was within his rights in withdrawing the
$77 offer, and we can see no proper reason for holding,
under the facts of this case, that any new contract had
been entered into between plaintiff and defendant. Public
policy requires that such a transaction be construed so that
the interest of the agent shall not too easily become hostile
to the interest of his principal. It should be borne in mind
that the plaintiff's case is based upon his express contract
with the defendant. Under the undisputed evidence this
contract was that he should receive $1 an acre for a buyer
for the land at $80 per acre. There never was any modifica-
tion of that contract between the plaintiff and defendant.
If the defendant had actually accepted a customer of plain-
tiff, and actually sold to him at a less price, that would
doubtless present a different question. But that is not this
case. The fact that the defendant in the first interview with
Norem offered to reduce the price of itself creates no new
right in the plaintiff. Norem bound himself to nothing.
The defendant bound himself to no more. We hold, there-
fore, that plaintiff was bound by his original contract made
with the defendant. Where a commission is claimed for
furnishing a buyer, and where no sale is actually made,
there is no reason of law or public policy why it should be

allowed, except in strict compliance with the contract of the parties.

II.    In view of our conclusions announced in the foregoing we need not discuss the question whether Norem was ready, willing and able to buy.    One circumstance appears in evidence that has some tendency to impeach the good faith of his offer.    It appears that the plaintiff commenced this suit immediately and upon the same day that the defendant refused to deal with Norem on the $77 basis.    The next morning the defendant repented his .trouble, and came to the plaintiff and offered to go ahead with the deal, and was advised by the plaintiff that Norem had "looked at another farm."    If the plaintiff's right of action was complete, he was not bound to again open up negotiations, nor could his suit be defeated simply by the unwillingness of Norem to renew negotiations.    But we are not prepared to say that the circumstance was not such as was proper to be considered by the jury on the question whether Norem was in good faith ready, willing and able to buy.    The significance of this circumstance is somewhat emphasized by the circumstances of Norem.    He was a farmer, living a few miles distant, who owned a farm of one hundred and sixty acres, which was subject to an incumbrance of $5,000.    There was evidence in the record tending to show that Norem wanted to sell his farm for the purpose of buying another, and that after the first interview with the defendant he said to other parties that he could not buy it unless he first sold his own farm.    At the time of the last interview, when he offered to take the farm, he had not sold his own farm. True, he testified on the trial that he was ready, willing and able to take defendant's farm, but his testimony in this respect was not conclusive on the defendant.

For the errors pointed out the case must be *reversed.*