## J. E. WENKS v. T. R. HAZARD.

**Agency:** SALE OF REAL PROPERTY: DEFAULT OF PURCHASER: RECOVERY OF COMMISSION. Where a real estate broker simply contracts to procure a purchaser on terms which the owner reserves the right to fix, he becomes entitled to his commission upon procuring a purchaser with whom the owner makes a contract of sale upon terms agreed on by them, and a failure of the purchaser to perform his contract will not defeat the broker's right to commissions.

**Same:** PLEADING AND PROOF: VARIANCE. The allegation of a petition for the recovery of commissions on the sale of real estate, that the commission was to be paid if the plaintiff procured a purchaser to whom the defendant was willing to sell, is sustained by proof that the broker procured a purchaser who was satisfactory to the owner.

Same: INSTRUCTIONS. In this action the evidence tended to show an effort by the broker to induce a purchaser to buy the property and that the purchaser made a contract with the owner on terms agreed upon by them. *Held,* that an instruction that the burden was on the broker to prove that his contract with the owner called for a commission upon the production of a purchaser to whom the owner was willing to sell, and that he produced a purchaser satisfactory to the owner, was not so inconsistent with another instruction to the effect that the contract between the owner and the purchaser was a conditional sale, and to recover the broker must prove that such a sale was contemplated at the time of the employment of the broker, as to be misleading.

Same: EVIDENCE. A broker in suing for a commission for procuring a purchaser may show that the owner understood and treated the contract with the purchaser procured by the broker as a performance of his agreement to furnish a purchaser who was satisfactory to the owner; and this question was properly submitted in the instant case for determination by the jury.

Same: EVIDENCE: HARMLESS ERROR. Any error in admitting in evidence a telegram and letter purporting to have been sent by the broker to the owner but having no relation to the case, is held to have been without prejudice.
.Weaver and Evans, JJ., dissenting.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

TUESDAY, OCTOBER 25, 1910.

SUIT to recover a commission for procuring a purchaser of certain personal property. . There was a verdict and judgment for the plaintiff. The defendant appeals.— *Affirmed.*

*O. M. Brockett* and *Clark & Hutchinson,* for appellant.

*Read & Read,* for appellee.

SHERWIN, J.—The defendant and one McLeod each

owned a block of stock of the Northwestern Laundry Company of Des Moines, and both were engaged in operating the laundry. McLeod owed the defendant $4,000, which was represented by a note, and the laundry company owed the defendant $4,500. The plaintiff, Wenks, also owed the defendant $400, for which he had given his note.

The plaintiff alleged in his petition that in the latter part of 1905, or the first of the year 1906, an oral agreement was entered into by him and the defendant, whereby the defendant agreed to pay him the sum of $2,000 if he should find a purchaser to whom the defendant was willing to sell his laundry stock; that pursuant to such agreement he did procure a purchaser who was satisfactory to the defendant, and to whom the defendant sold said stock. There was a general denial on the part of the defendant. The situation seems to have been this: The defendant was anxious to get the $4,000 that McLeod owed him, as well as the amount due him from the laundry company. The plaintiff testified that Hazard wanted to sell to some one other than McLeod, if possible; that he and Hazard talked it over for a month or two; that finally he told Hazard that he could sell the stock to McLeod if he would make it so McLeod could pay for it on the installment plan; that Hazard "said he would do it. He said he would fix it in any way he could get rid of it. He said, if I could get McLeod to take that stock so that the payments were satisfactory to him, he would give me $2,000." On the 23d of January, 1906, Hazard and McLeod entered into a written agreement, whereby the former agreed to sell, and the latter to purchase, the former's shares of stock in the laundry company on the following terms, so far as material here. McLeod was to pay $4,000 in cash. $17,500 was payable in installments of $100 of the principal and all interest accrued on the whole of the principal on the 23d day of each month thereafter until the whole amount was paid. The contract

also stipulated that McLeod should at once take full control of the laundry business, and that he . should render to Hazard weekly statements of the receipts, etc. It was also stipulated that, upon failure to pay any of the installments as agreed, Hazard might at his option declare the contract forfeited. The cash payment to be made was to take up McLeod's $4,000 note, and the balance that was to be paid included the laundry company's indebtedness to Hazard. The cash payment was made, and McLeod took possession. He was in possession for some time, just how long not clearly appearing, and, so far as the record shows, he made all payments that were due. The contract seems to have been finally mutually abandoned with the result that Hazard became the owner of McLeod's stock as well as his own.

The appellant testified that plaintiff had nothing to do with procuring McLeod to make the contract of January 23, and that he never agreed to pay a commission as alleged. Whether there was such an agreement as the plaintiff testified to was submitted to the jury under proper instructions, and the finding was against the defendant. If the defendant did in fact agree to pay the commission if McLeod would take the stock on an installment plan at a price and upon terms and conditions to be fixed and determined by the defendant, it is manifest that the financial ability of McLeod to complete his payments in accordance with his agreement is not a condition of plaintiff's right to recover. An installment plan contemplates future payments, and, where the defendant fixes his own terms and conditions, such payments may be extended over any number of years that he may designate. Indeed, under such an agreemnt the defendant could make any terms that he saw fit. He could defer payments with or without security. He could pass title at once or retain same for his security, as he did do. He could make an absolute

1. AGENCY: sale of real property: default of purchaser: recovery of commission.

sale or an agreement to sell, without in any way depriving the plaintiff of his right to the commission agreed upon. If the defendant agreed to pay the plaintiff $2,000 if McLeod would enter into such a contract as the defendant might dictate or consider desirable, the defendant's liabiltiy to the plaintiff became fixed when McLeod entered into such a contract.

This is not a case where the commission was to become due upon a completed sale. Nor is it a case where the terms and conditions of the sale were fixed in advance by the owner and he agreed to pay a commission when a purchaser on the terms stated was produced. Where the commission depends upon a consummated sale, the burden rests upon the plaintiff to show that the purchaser was able and willing to perform, and that the owner was at fault. And the same rule applies where the terms are fixed in advance by the owner and the agent claims to have procured a purchaser upon the terms stated. The case at bar belongs to still another class in our judgment. Here the terms of sale were not fixed in advance by the owner, and therefore it was impossible for the plaintiff to know what they were or might be. The terms and conditions of the sale being expressly reserved for determination by the owner, it is manifest that the agent or broker can not know whether the purchaser can or will accede to the terms fixed. The owner reserves the right to and determines the ability of the purchaser to pay or to comply with other terms which he may fix, and it would be manifestly unjust to say to the broker that his commission must depend upon the correctness of the owner's judgment or ability.

While there is more or less confusion in our own cases, we do not think a case can be found which supports the appellant's contention. In the cases which appear to lend support thereto, it will be found that the facts are entirely different, and that the broad language used in some instances was applied only to the case then under considera-

tion. A review of all of the cases would require too much time and occupy too much space, but we may refer to a few of them upon which reliance is placed. In *Blodgett v. Railway Co.*, 63 Iowa, 606, the prices and terms were fixed by the defendant in advance, and the same is true in *Iselin v. Griffith*, 62 Iowa, 668. In *Greusel v. Dean*, 98 Iowa, 405, the contract was to sell personal property. In *Tracy v. Forbes*, 132 Iowa, 250, the agent undertook to make a sale. The owner never saw the purchaser, and the purchaser failed to make the initial payment. *Snyder v. Fidler*, 125 Iowa, 379, was a case where the broker undertook to sell or exchange the property. In none of the cases, so far as we have been able to find, has it been held that there can be no recovery where the owner reserves the right to fix his own terms and conditions, and agrees to pay a commission for a purchaser who will enter into such a contract as he shall dictate. We think the distinction between the cases relied upon by the appellant and this one has been recognized in a great many of our cases, and always where it was essential to a proper determination of the rights of the parties. See, also, *Roche v. Smith*, 176 Mass. 597 (58 N. E. 152, 51 L. R. A. 510, 79 Am. St. Rep. 345); *Ward v. Cobb*, 148 Mass. 518 (20 N. E. 174, 12 Am. St. Rep. 587); *Frances v. Baker*, 45 Minn. 83 (47 N. W. 452); *Odell v. Dozier*, 104 Ga. 203 (30 S. E. 813); *Springer v. Orr*, 82 Ill. App. 558.

The appellant insists that there was a variance between the pleading and the proof which should reverse the judgment. But we can not agree with the contention. The petition alleged that the commission was to 2. SAME: pleading and proof: variance. be paid if the plaintiff procured a purchaser to whom the defendant was willing to sell. This may fairly be construed to mean a purchaser who was satisfactory to the owner, and we think such an allegation would warrant the evidence upon which the case was in fact tried and determined. But aside from

the pleading the case was tried and decided on the single proposition that plaintiff and defendant entered into the oral agreement alleged. A variance is not fatal unless a party has been misled thereby. Code, section 3597.

After stating the issues, the court told the jury that the burden was on the plaintiff to prove that he entered into a contract with the defendant whereby the defendant 3. SAME: instruc-   agreed to pay a commission to the plaintiff tions.        for a purchaser to whom he was willing to sell, and that plaintiff did procure a purchaser who was satisfactory to defendant. In another instruction the jury was told that the contract between McLeod and the defendant was a conditional sale, and that to recover the plaintiff must prove that such a sale was contemplated by the plaintiff and defendant at the time they made their verbal contract for a commission, or that Hazard accepted it as in compliance therewith. These two instructions are said to be so inconsistent as to be prejudicial. We do not think they are, however. The evidence all related to an effort on the part of the plaintiff to induce McLeod to buy. The evidence tended to show that McLeod was induced to purchase by the plaintiff, and that the contract between McLeod and defendant was the result of plaintiff's efforts. The jury could not possibly misunderstand the matter, and, if there is a slight inconsistency between the instructions, it could not have been prejudicial. It is also said that the second instruction mentioned submitted an issue not made by the pleadings. What we have already said about the issue is sufficient answer to this claim.

Another criticism of the same instruction is that it authorized the jury to construe the contract entered into by the plaintiff and defendant. It was certainly competent 4. SAME: evi-   to show that the defendant understood and dence.        treated his contract with McLeod as a compliance with the agreement on the part of plaintiff to furnish some one who was satisfactory to him. And we

think it was proper for the jury to determine the question. Certain it is that the defendant could not have been prejudiced thereby. But, however that may be, the appellant raises the point for the first time on this submission, and it can not be considered.

Plaintiff, over the defendant's objections, was permitted to put in evidence a certain telegram and a certain letter purporting to have been sent to him by the defendant. Neither relate to this case or anything connected with it so far as the record shows, and there is nothing in either that could be prejudicial to the defendant. It is claimed that they were not properly authenticated, but that specific objection was not made when they were put in evidence, nor was any question raised as to their having been in fact sent .to the plaintiff by the defendant. There clearly should not be a reversal on account of the letter and telegram.

5. SAME: evidence: harmless error.

We have given this case the care which its importance to both sides merits, and we reach the conclusion that there is no ground upon which a reversal can be justly based. We think the evidence sustains the verdict and judgment. The judgment is therefore *affirmed.*

EVANS, J. (dissenting).—I am unwilling to concur in the majority opinion. My views of the case are expressed in the former opinion which is reported in 121 N. W. 1058, and I do not care to repeat. I think the case is ruled by our previous cases. Some of these are reviewed in the majority opinion and are distinguished from the case at bar. I prefer that they be thus distinguished than that they should be professedly overruled. I think the distinction urged is exceedingly difficult. Moreover, the statement of the case for the purpose of the distinction involves in my judgment a straining of the record to some extent. The real substance of the record is that the plaintiff obtained a judgment in the court below for $2,000 as an alleged agency commission for which there was no

substance of consideration. It rested upon the merest nakedness of an alleged oral contract to pay. The contemplated sale was never consummated. The contract signed by McLeod was executory and was never performed. It was not enforceable against him because of his insolvency. In its essence the case comes, in my judgment, within the rules laid down in our previous cases which are discussed in the majority opinion.

The tendency of this holding is to lower the business standard of an agency broker and to permit a broker's commission to become a mere matter of plunder. The plaintiff in this case was not even a broker, but was engaged in a wholly distinct line of work. His case is based upon an alleged express contract, and the verdict of the jury is such as to suggest the need of an additional paragraph to the statute of frauds.

WEAVER, J.—I concur in the foregoing dissent.