D. W. JONES v. SARAH A. FORD, Appellant.

**Brokers:** COMMISSIONS: INDIVIDUAL LIABILITY OF PARTY CONTRACTING THEREFOR: EVIDENCE. Where a person acting as a referee for the sale of land individually employed a broker to procure a purchaser, it not appearing that the broker knew that such party had no authority to sell except as referee, and a purchaser was found ready, able and willing to comply with the contract of sale as required, the referee became personally liable for the commission although unable to make a contract which would procure the property for the purchaser. In this action the evi-

dence is held sufficient to sustain a finding that the broker secured a purchaser ready, able and willing to comply with the conditions of the contract and that the sale failed because of requirements insisted upon by other parties interested in the land; and the evidence is also held sufficient to support a verdict against defendant individually.

**Same:** COMMISSION CONTRACT: CONSTRUCTION. Where there was nothing to indicate that a broker had authority to make a binding contract of sale, and no evidence to indicate that his commission was to be paid only in case of sale, the contract was to procure a purchaser ready, able and willing to buy, and not to effect a sale.

**Same:** WHEN COMMISSION IS EARNED. Where a commission contract simply requires the broker to find a purchaser ready, able and willing to buy on terms satisfactory to the seller, his commission is earned when such a purchaser is produced; although for some reason, not the fault of the broker or inability of the purchaser to comply with the terms of sale, a binding contract is not actually made.

**Pleadings:** MOTION TO STRIKE: HARMLESS ERROR. Where a cause was submitted to the jury on proper issues, refusal to strike portions of the proceedings presenting issues not proper to be submitted and which were not in fact submitted, was not prejudicial error.

**Special interrogatories:** SUBMISSION. Special interrogatories not calling for findings of fact which would determine any issue in the case should not be submitted.

**Jurors:** DISQUALIFICATION: ATTORNEY AND CLIENT. The mere relation of debtor and creditor is not a statutory ground of challenge to a juror; and where the relation of attorney and client had been terminated by the conclusion of the litigation, the only remaining relation being that the juror was still indebted for a portion of his attorney fees, payment of which had been postponed with the attorney's consent, the juror was not disqualified on the ground that he was a client of an attorney engaged in the cause.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

TUESDAY, FEBRUARY 13, 1912.

ACTION to recover a commission under a contract to

procure a purchaser for a farm. There was a verdict and judgment for plaintiff for the amount claimed, and defendant appeals.—*Affirmed.*

*W. R. Hart* and *John J. Ney,* for appellant.

*Remley & Calkins,* for appellee.

McCLAIN, C. J.—As the arguments of counsel are directed principally to the question whether there was any evidence to support a verdict for the plaintiff, it will be necessary to set out in some detail the facts to which the testimony had relation as bearing upon the making and performance of the contract under which plaintiff claims to recover.

The defendant, a widow, formerly residing in Johnson county, but at the time to which the testimony in this case relates a resident of Enid, Okla., was the owner of a one-third interest in fee in a farm of three hundred and fifteen acres situated in Johnson county, which had belonged to her husband before his death. The two-thirds interest belonged to the husband's heirs. In a proceeding for partition of the farm, which was pending during the entire course of the negotiations to which the testimony relates, defendant had been appointed referee to make a sale of the farm, and before the negotiations were concluded there had been an appraisal of the value of the property at $93 per acre, rendering it necessary that the sale by the referee be for not less than that amount. On February 11, 1909, plaintiff addressed to the defendant a letter, of which the following excerpt is the material part: "Madam: Some time ago I wrote to you, asking if you wanted to sell your farm, and I think that you replied you did and your price was $85.00 per acre, but you only offered 50 cents per acre commission for selling it; the commission is hardly large enough to justify me to make very much of

an effort as the farm is about eleven and one-half miles from Iowa City and we often find it hardly pays to go so far on chances, when there is only fifty cents per acre commission, so I thought I would write you again to find out the very lowest price per acre you will take for it now." To this letter he received a reply from defendant, as follows: "Dear Sir: Will give you my terms on the farm; it is rented for another year for $1,108, so could not give possession for another year unless he would leave the renter on the place; will take $90 per acre; would compromise if I see there is a deal; will give you one dollar in commission. I answered your telegram." It further appears that plaintiff thereupon wrote a letter to defendant, which has been lost, dated about February 19, in which plaintiff expressed his willingness to accept $1 per acre commission for selling or obtaining a purchaser for the farm. Plaintiff proceeded to make some efforts to secure a purchaser, and transmitted to her some kind of an offer to which she made the following reply, under date of September 21: "Dear Sir: Yours of the 17th at hand and I don't want to decide whether to take that offer until I hear from Mr. Owen; also want to do business through him. Think he will be at home by this time so will have to put you off without any direct reply until I hear from him." On October 4, one Owen, referred to in the letter last above set out, sent to defendant a telegram in these words: "Offered ninety-three dollars cash per acre. Jones expects dollar per acre commission out of that. Write me what he should do." Thereupon defendant replied to Owen on the same date by telegram: "Accept this offer." If we understand the record defendant mailed to plaintiff a copy of this telegram. It appears that the telegram signed by Owen was sent by him at plaintiff's suggestion, that he paid the charge for sending it, and that by the direction of Owen he received defendant's reply at the telegraph office. On October 6, Owen sent to defendant

the following telegram: "Will pay five thousand cash, possibly more; balance when possession given; wire what to do." And on the same date he received from defendant the following reply: "That will be satisfactory; make the deal." After consultation with Owen, plaintiff proceeded to negotiate further with one Durst, with whom plaintiff had already held some conversation in regard to the purchase of the property by Durst, who had expressed a willingness to pay $93 per acre before the telegram of October 4 was sent to defendant. In these negotiations Durst expressed his willingness and ability to take the land at that price, paying down the amount suggested of $5,000 or $6,000, the balance on March 1 following, when possession of the land could be given if a deed was then made, but the attorney representing defendant as referee insisted upon a contract with forfeiture clauses, binding defendant as referee, and not individually; and, if we understand the record, Durst refused to pay in any money until the sale had been approved by the court. Soon afterward a sale of the farm was negotiated to another party for $94 per acre, and such sale was confirmed. In the foregoing statement no reference is made to some matters of fact about which there was conflicting testimony, but it will sufficiently serve as a basis for the consideration of the questions presented so far as we find them to be material.

I. It is contended for the appellant that the negotiations were carried on with defendant as referee, and that she is not individually liable on any contract to pay a commission. The record does not support this

1. BROKERS: commissions: individual liability of party contracting therefor: evidence.

contention. It does not appear that plaintiff knew when he first opened negotiations with defendant that she had no authority to sell except as referee, or that he conducted the negotiations with her as referee, and it appears that Durst had no knowledge of defendant's inability to make title in

her own right until the time when he offered to pay $93 an acre, having previously expressed to plaintiff his willingness to pay $90 an acre. The evidence, therefore, shows a contract with plaintiff made by defendant purporting to act in her own right and on her own responsibility to pay a commission of $1 per acre for the sale of or for the procuring a purchaser for the farm on satisfactory terms, and it tends to show, also, the procurement by plaintiff of Durst as a purchaser who was ready, able, and willing to buy the farm at the agreed price. The court in its instructions left it to the jury to find whether plaintiff procured a purchaser able, ready, and willing to purchase the farm upon terms acceptable to defendant, and correctly stated that "to procure a purchaser" means "to produce or bring to the owner of property a person ready, able, and willing to buy upon terms agreeable to such owner, or to procure from such prospective purchaser an offer to purchase upon terms agreeable to the owner;" that "to be ready means to be ready to purchase on such terms as are agreeable to the owner at the time, and to be able means that the purchaser must have the money at the time to make any cash payments that are required in order to meet the terms of the seller, and does not simply mean that the purchaser have property upon which he could raise the amount of money necessary, but, as stated, he must actually have the money to meet the cash payment and be in shape financially to meet any deferred payments," and that "to be willing means to be willing to make the purchase upon such terms."

There was certainly evidence tending to show that Durst was ready, able, and willing to meet all the requirements of the defendant, and that the difficulty about concluding the transaction was not between defendant as an individual and Durst as purchaser, but a refusal of Durst to comply with requirements insisted upon by the attorney in the partition proceeding representing some of the par-

ties to that proceeding, but without authority to speak for the defendant as an individual. It may be that defendant had no authority to bind the other parties to the case; and, of course, she had no authority as referee to make a contract of sale which would be binding upon the court, for any sale negotiated by her as referee must necessarily be subject to the courts approval.

But if she saw fit as an individual to employ plaintiff to negotiate for a purchaser on specified terms, and such a purchaser was found ready, willing, and able to comply with the terms which she required, plaintiff was entitled to the commission contracted for without regard to whether she was able on her part to make a contract which would secure the property to the purchaser. Counsel for appellant do not question the power of a person who in fact occupies a fiduciary relation such as that of referee, administrator, or executor to enter into a contract which will bind such person as an individual; and we think that the court correctly assumed under the evidence that defendant purported in her negotiations with the plaintiff to act in her individual capacity and not as referee, and that plaintiff entered into the contract with her in her individual capacity.

II. The further contention for appellant is that the contract between defendant and plaintiff was that plaintiff should effect a sale of the property, whereas the evidence showed that he went no further than to pro-

2. SAME: commission contract: construction.

cure a purchaser ready, willing, and able to buy. The lower court interpreted the evidence as establishing a contract to procure a purchaser, and as to this we think there is no conflict in the evidence. There is no pretense that plaintiff was authorized to conclude a contract of sale of the farm which would be binding upon defendant as to its terms; and there is nothing in the correspondence between defendant and plaintiff or in the telegrams sent and received by Owen acting in con-

junction with plaintiff to suggest that the commission to plaintiff was only to be paid in the event that a sale of the property should be consummated. The details as to the terms of sale were left open. It is evident, therefore, that defendant expected plaintiff to procure a purchaser for her on terms which should be found satisfactory, and if such purchaser was procured then plaintiff was to have his commission. It must be borne in mind that the attorney for the parties to the partition proceeding had no authority to represent defendant as an individual, and that he did not at any time purport to do so. Defendant was throughout the negotiations in Oklahoma, and the only communications from her having any bearing upon the case were those already set out. Durst was ready, willing, and able to comply with all the terms proposed by defendant, and he failed to get the farm because the attorney in the partition proceeding, who did not represent the defendant, insisted upon terms not indicated by defendant, and the property was in fact sold to another purchaser at an advance of $1 per acre with the same commission to other agents as was to have been paid to plaintiff under his contract. It is apparent that defendant did not have the authority to make a binding sale of the property under which Durst could have procured title; but this was not the fault of Durst nor of the plaintiff. Durst did not decline to make the cash payment to defendant or to anyone representing her; indeed, he had a right to refuse to make a cash payment to anyone under the negotiations with defendant until it should appear that defendant was in a situation to make a binding contract of sale. But the inability of defendant to make a contract under which she would be entitled to a cash payment could not be assigned as a reason why plaintiff should not have his commission when he procured a purchaser ready, willing, and able to buy on terms which defendant should propose, and which

would have resulted in a sale of the premises had defendant been able to make such sale.

III. In a general way counsel for appellant criticise the instructions given, and complain of the refusal to give instructions asked, but the argument relates rather to the

3. SAME: when commission is earned.

theory on which the case was tried by the court, and the sufficiency of the evidence to support the verdict on the theory thus presented to the jury, than upon specific errors in the instructions given or the overruling of any specific instructions asked. The only question of law involved in the presentation of the case to the jury which is specifically argued is that relating to the obligation of the plaintiff to procure a purchaser to whom there was an actual sale made or a purchaser ready, able, and willing to buy on terms proposed, and who did in fact comply, so far as he was allowed to do so, with such terms. If the obligation assumed by plaintiff had been to procure a purchaser to whom a sale by a binding contract should in fact be made, then many of the cases cited for appellant would be pertinent, and it would be perfectly clear that plaintiff was not entitled to a commission. But, as indicated in the preceding paragraph, this was not the contract between the parties. It is well settled that, if the undertaking is to find a purchaser ready, willing, and able to buy on terms satisfactory to the seller, the commission is earned when such a purchaser is produced, although for some reason not attributable to the fault or inability of the proposed buyer no binding contract of sale and purchase is actually entered into. *Cassady v. Seeley,* 69 Iowa, 509; *Blodgett v. Sioux City & St. P. R. Co.,* 63 Iowa, 606; *Ford v. Easley,* 88 Iowa, 603; *Bird v. Phillips,* 115 Iowa, 703; *Ward v. McQueen,* 13 N. D. 153 (100 N. W. 253).

IV. In an assignment of error noticed in the brief, but not referred to in the argument, exception is taken to the action of the court in overruling motions to strike

portions of plaintiffs pleadings. The rulings on these
motions could not have prejudiced the appel-
lant unless some issue was raised in the
pleadings which should not have been sub-
mitted to the jury, and which was in fact submitted so that
the jury were allowed to consider questions not material
to the case; for it is not contended that appellant was
otherwise prejudiced by the rulings. As we have already
indicated that the case was submitted to the jury on proper
issues, we need not further notice the assignments with ref-
erence to these rulings.

*4. PLEADINGS: motion to strike: harmless error.*

V. The court failed to submit to the jury special in-
terrogatories proposed for the appellant; but clearly the
appellant has no ground of complaint in this respect for
the interrogatories proposed did not call for
findings of fact determinative of any issue
which was submitted. *Brown Land Co. v.
Lehman,* 134 Iowa, 712; *Trumble v. Happy,* 114 Iowa,
624; *Hawley v. Chicago, B. & Q. R. Co.,* 71 Iowa, 717;
*Morbey v. Chicago & N. W. R. Co.,* 116 Iowa, 84.

*5. SPECIAL IN-TERROGA-TORIES: sub-mission.*

VI. Appellant's challenge to a juror on the ground
that the relation of client and attorney existed between
him and one of the attorneys for plaintiff (see Code, sec-
tion 3688, par. 5), was properly overruled
for the reason that, although such relation
had at one time existed, it had been termi-
nated by the conclusion of the litigation, the only relation
remaining being that the juror was still indebted to the
attorney for a portion of his fee, payment of which had
been postponed by the attorney's consent. The mere rela-
tion of debtor and creditor is not made a ground of chal-
lenge by statute.

*6. JURORS: dis-qualification: attorney and client.*

The judgment of the trial court is *affirmed.*