ALLEN M. BLUNT, appellee, v. GEORGE A. WENTLAND, appellant.

No. 49611.

(Reported in 93 N.W.2d 735)

608

DECEMBER 16, 1958.
REHEARING DENIED FEBRUARY 18, 1959.

Alfred A. Beardmore and L. A. Nelson, both of Charles City, for appellant.

E. W. Henke, of Charles City, for appellee.

OLIVER, J.—This is an action at law to recover a real-estate commission, allegedly due John Kepple, a broker, for procuring a purchaser for a farm owned by defendant, and by Kepple assigned to plaintiff. Trial to the court resulted in judgment for plaintiff for $855 and this appeal by defendant.

Although he was present in court throughout the trial, appellant elected not to testify nor to offer any other evidence. Upon appeal the only errors assigned are the overruling by the trial court of appellant's motion for judgment, which asserted that, as a matter of law, the evidence failed to prove a purchaser had been secured who was ready, willing and able to purchase on defendant's terms and also that there was not sufficient evidence to sustain a verdict for plaintiff. We hold the evidence was sufficient to support the judgment. Under the established rule the record will be here considered in the light most favorable to appellee.

John Kepple was a licensed real-estate broker with offices at 96 Main Street, Charles City, Iowa. In the fall of 1956 appellant told Mr. Kepple he wished to sell a 115-acre farm and orally engaged Kepple to find a purchaser for it. The price asked was $17,100, payable $6000 down and $1000 per year plus interest at 5%.

Mr. Kepple contacted Henry J. Lore and wife. October 20, through his efforts, they made appellant a signed offer to purchase the farm for $17,100, payable $3000 down, to be held by Mr. Kepple as seller's agent, pending delivery of final papers, $2500 March 1, 1957, and $1250 per year thereafter, which included interest at 4½%. The offer was made upon a form approved by Iowa Real Estate Association and was accompanied by a check for $3000. The offer is in evidence as Exhibit A. Mr. Kepple submitted this offer to appellant who rejected it.

Mr. Kepple continued his efforts to procure a purchaser for the farm and arranged a meeting with appellant and the Lores at his office the evening of October 30. At that meeting appellant produced a written contract for the sale of the property which had been prepared by or for him. The Lores did not know appellant had prepared a contract, nor did they expect they would be asked to execute it later that evening. However, when

it was presented to them they proceeded to look at it and to consider and discuss its provisions with appellant and Mr. Kepple.

The record does not disclose all the terms and provisions of this instrument, which was taken away by appellant and which he did not offer in evidence in the trial. The record does show the purchase price stated in the instrument was $17,100, the same as previously quoted, and that although "they were made out in different forms, there was not too much" difference between the contract submitted by appellant and the prior written offer of Mr. and Mrs. Lore. Appellant's contract provided for a payment of $5000 at the time the contract was signed, $1000 when possession of the property was taken, March 1, 1957, plus interest thereon at 7%, and the balance to be paid $1250 per year, which included interest at 4½%.

Mr. and Mrs. Lore were to take possession March 1, 1957, but were not permitted to make any major alterations in the buildings without appellant's consent. There was a discussion that the Lores planned to mortgage their house in Charles City for $4500 to secure the money to make the $5000 payment. They had also between $1000 and $2000 deposited in a local bank. Mr. Kepple had made arrangements for the loan to the Lores and "the money was committed for that loan." The record shows that at one time previously the Lores had made a loan upon this property.

Mr. Lore testified that, after discussing the contract, they told appellant that the terms he proposed were acceptable and agreeable to them but they would like to have their lawyer, Mr. Zastrow, look over the contract before they signed it, "to see that the form was all right."

"We told Mr. Wentland our attorney was Mr. Zastrow, and he stated if we were going to have anything to do with Zastrow he didn't want anything to do with us; he got up and said we might as well call the whole deal off and walked out."

Before Mr. Zastrow's name was mentioned appellant had not asked that the contract be signed that evening. It was after such mention that appellant insisted it be then signed.

I. The record supports the findings of fact of the distinguished trial court, which state in part:

"6. That the defendant refused to sell to the Lores because he did not desire to deal with the attorney chosen by them to handle the transaction."

There is no suggestion in the record, or elsewhere, that this attorney was not of high character, ability and reputation. Nor did appellant, then or subsequently, give any reason for his objection to this attorney and his refusal to complete the deal with the Lores if the latter consulted such attorney.

The general rule governing such situations is thus stated in 12 C. J. S., Brokers, section 95a(2), pages 223 and 224: "* * * the principal must have an adequate ground or valid excuse for refusing to complete the transaction in order to defeat the broker's right to a commission; his refusal must not be arbitrary, capricious, unreasonable, wrongful, or fraudulent."

8 Am. Jur., Brokers, section 184, page 1097, states: "Once the broker has procured a person who is able, ready, and willing to purchase the property on the terms offered by the owner, he is entitled to commissions, even though the failure to complete the contract is due to the default or refusal of the employer."

See annotation in 43 L. R. A. 595 et seq., and annotation in 169 A. L. R. 607 et seq.

The record in the case at bar shows no adequate ground or valid excuse for appellant's refusal to complete the transaction. On the contrary, it supports a finding that such refusal was arbitrary, capricious and unreasonable.

In Raymond v. Stinson, 196 Iowa 881, 195 N.W. 588, where the vendor gave a prospective purchaser until a certain date to accept an offer, but withdrew the offer before that time, though the vendee was ready and willing to accept on the specified date, the broker was held entitled to his commission, even though as between himself and the purchaser the vendor had the right to withdraw the offer before acceptance.

Jones v. Ford, 154 Iowa 549, 557, 134 N.W. 569, 572, 38 L. R. A., N. S., 777, states: "It is well settled that, if the undertaking is to find a purchaser ready, willing and able to buy on terms satisfactory to the seller, the commission is earned when such a purchaser is produced, although for some reason

not attributable to the fault or inability of the proposed buyer no binding contract of sale and purchase is actually entered into. [Citations]."

A recovery by a broker was affirmed in Brown v. Wilson, 98 Iowa 316, 317, 318, 67 N.W. 251, although, through fault of the principal, the sale was not consummated. It states: "In Cassady v. Seeley, 69 Iowa 509 (29 N.W. Rep. 432), it is said: 'We understand the law to be that, if an agent or broker is employed to sell property at a stated price, and he finds a customer who is able and willing to take the property at that price, and upon the stated terms, he is entitled to compensation, whether a sale is effected or not.'"

Blodgett v. Sioux City & St. Paul Ry. Co., 63 Iowa 606, 609, 610, 19 N.W. 799, 801, states a broker is entitled to his commission when he has found a customer who is able and willing to take the property at the price and on the terms designated "whether the sale is consummated or not." To the same effect are statements in Ford v. Easley & Co., 88 Iowa 603, 55 N.W. 336; Brown v. Wilson, 98 Iowa 316, 67 N.W. 251; Collins v. Padden, 120 Iowa 381, 94 N.W. 905; Wenks v. Hazard, 149 Iowa 16, 127 N.W. 1099; and Jones v. Ford, 154 Iowa 549, 557, 134 N.W. 569, 38 L. R. A., N. S., 777.

McDermott v. Mahoney, 139 Iowa 292, 304, 115 N.W. 32, 37, points out: "The plaintiff did everything which by the contract he was bound to do to entitle him to his commission if he produced a purchaser ready, willing, and able to buy on the terms of the contract, and defendant could not, by his own act in refusing to proceed, defeat recovery of the agreed compensation. The authorities cited on this point for appellant do not sustain his contention. The question is not here as to whether Cathcart became entitled to a deed, but whether plaintiff produced him as a purchaser ready, willing, and able to buy on the terms of the contract."

Raymond v. Stinson, 196 Iowa 881, 882, 883, 195 N.W. 588, follows the general rule. It states: "Appellant urges upon us that the defendant had a right to withdraw his offer at any time before its acceptance, regardless of whether he gave time to Patty for acceptance or not. Let that be granted. This would show only that he never bound himself to Patty in a legal

sense. This would not negative his liability to the plaintiff, if his contract was what the plaintiff claims it to be. Assuming such to be the contract, as the jury found, then plaintiff's commission, was earned when he produced a purchaser who was ready, able and willing to buy, upon the terms then fixed by the defendant. Defendant's liability to the plaintiff was not controlled by his nonliability to Patty. As between him and Patty, the defendant had a right to change his mind, and to withdraw his offer before acceptance. But this would not discharge his liability for the commission earned, if Patty stood ready, able, and willing to perform."

In Lieuwen v. Kline, 142 Iowa 14, 120 N.W. 312, cited by appellant, there was a directed verdict for plaintiff-broker. Upon appeal this court properly considered the evidence in the light most favorable to appellant and held it insufficient to show conclusively that appellee-broker had complied with his contract. In the case at bar the evidence must be considered in the light most favorable to appellee and it need not show conclusively that the broker complied with his contract. The judgment will not be disturbed if supported by substantial evidence.

II. Appellant contends there was not sufficient evidence to show the Lores were ready, able and willing to buy the property in accordance with his terms. Mr. Lore so testified and the trial court so found.

However, appellant argues, "this court has repeatedly said that a purchaser to be able must have the money to meet the cash payment, and he is not able if he merely has the property upon which he could raise the necessary money. Reynor v. Mackrill, 181 Iowa 210, 164 N.W. 335 [1 A. L. R. 523]."

It is true such a general statement has been made. But in applying it, the court stated in the Mackrill case (181 Iowa at pages 216 and 217):

"Mrs. Blankenburg said, over objection, that she was able to pay over the price and always was ready, had made arrangements to pay for the land when she agreed to buy; that the money was ready for her, was at her command; that she always looked out so that, if she had to pay cash, she knew where she could get the money, and it was ready for this deal—she was

able to pay the full amount on February 20th; and she states how arrangement therefor was effected. It may be conceded that this is somewhat shaken by cross-examination and counter testimony. But enough remains to make her ability a fair jury question.

"* * * But, in McDermott v. Mahoney [supra], 139 Iowa 292, at 306 [115 N.W. 32], where a proposed buyer testified generally that he was able to buy, that he could within a day or two have raised the money to make the necessary cash payment if the owner had not refused to sell, and it appears that there was issue on performing by a specified time, and, at the time at which the ability was questioned, the agent still had ten days to perform, it is held that in these circumstances neither immediate ability nor tender nor actual possession of enough cash to tender, or readiness to tender, is material."

Crow v. Casady, 191 Iowa 1357, 1359, 1360, 182 N.W. 884, 885, states: "It is strenuously urged by the appellant that the record fails to show that the purchaser procured by the appellee was able to purchase the premises. * * * The undisputed evidence shows that the purchaser owned a large farm of 200 acres, fully equipped with machinery and livestock, and that he declared his willingness to pay cash for the appellant's interest in the farm, as soon as the appellant could procure a good abstract and would assign his contract with Raffensperger to the buyer. The question of the purchaser's ability to pay was submitted to the jury by the court under proper instructions, * * *."

The Crow case states also (pages 1360, 1361):

"The refusal of the appellant to enter into a contract and close the deal with the purchaser procured by the appellee was not based upon any inability on the part of the purchaser to perform, but solely on the claim that the appellee had no authority at that time to sell at the original price of $250 an acre. We had a similar situation before us in the case of McDermott v. Mahoney, supra [139 Iowa 292], wherein we said:

" 'Among the many cases to which our attention is called by counsel for appellant, we have failed to find a single one which supports his contention that, to demonstrate the ability of the purchaser to carry out the contract contemplated in the agency

agreement, it must be shown that the proposed purchaser, when offered, has on his person or instantly within reach the amount of cash required to make the purchase, where something further remains to be done on the part of the seller before he is entitled to receive the cash payment, and the latter repudiates the proposed sale and refuses to proceed, on the ground that he is unwilling to sell on the terms of the agency agreement. Having elected to repudiate, the appellant was not entitled afterwards to mend his hold by insisting that, if he had not repudiated the contract, the purchaser would not instantly have been able to produce the required cash payment. That a party who has elected one ground of objection cannot afterwards mend his hold and select another, which might have been obviated, had it then been insisted upon, is well settled. Donley v. Porter, 119 Iowa 542; Stanton v. Barnes, 72 Kan. 541 (84 Pac. 116). "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and different consideration." Railway Co. v. McCarthy, 96 U. S. 258 (24 L. Ed. 693).'

"The question of the purchaser's ability to perform was submitted to the jury under proper instructions. The refusal of the appellant to perform the contract on his part was predicated wholly on his claim of a lack of authority on the part of the appellee to sell at the stated price. There was evidence to support the finding of the jury to the effect that the purchaser was able to perform the contract. The appellant is not in a position to now question the finding of the jury in this regard. There is no error in the record at this point."

We have already pointed to the finding of the trial court, supported by substantial evidence, that appellant refused to complete the transaction solely because he did not desire to deal with the attorney chosen by the Lores to represent them. The arrangements made by the Lores to make the down payment on the property were discussed at the October 30 meeting and apparently were satisfactory to appellant. In any event he made no objection to such arrangements or to the purchasers at that time. Nor does the record show any such objection made

616

by him before or during the trial. In this respect the case against appellant is stronger than the cited cases. Appellant's contention he was entitled to judgment for failure of appellee to show the Lores were ready, able and willing to buy the property on appellant's terms is not meritorious.

· It may be observed that the Iowa rule is in accord with the general rule as stated in Dotson v. Milliken, 209 U. S. 237, 28 S. Ct. 489, 52 L. Ed. 768:

 "The inability of the prospective purchaser to complete the purchase is not available as an afterthought to defeat the right of the broker employed to find a purchaser to recover his agreed commissions, where the sale failed wholly through the fault of the owner, who made no objection to the purchaser."

For a good discussion of several of the propositions here involved see Bailie v. Ridker, 249 Minn. 161, 81 N.W.2d 798. There are like holdings in many other jurisdictions.—Affirmed.

GARFIELD, C. J., and BLISS, WENNERSTRUM, HAYS, and PETERSON, JJ., concur.

LARSON, THOMPSON and LINNAN, JJ., dissent.