J. ALBERT MURPHY, appellee, v. GILBERT A. BROWN, appellant.

No. 50256.

(Reported in 108 N.W.2d 353)

April 4, 1961.

William M. Carron, of Des Moines, for appellant.

Joseph Z. Marks and George E. Flagg, both of Des Moines, for appellee.

LARSON, J.—This is an action at law to recover a real-estate commission allegedly due plaintiff, J. Albert Murphy, a broker, for procuring a purchaser for a laundromat located in Des Moines and owned by defendant, Gilbert A. Brown. Trial to the court resulted in judgment for plaintiff for $1500, and defendant appeals.

The trial court found plaintiff had produced a buyer ready, willing and able to purchase the property under the terms of the listing contract, and that he was entitled to a commission on the submission of that offer. The evidence which we must consider in the light most favorable to appellee is sufficient to support that judgment.

The only errors assigned were that the court erred in ruling as a matter of law (1) that the plaintiff had procured a buyer who was ready, willing and able to go through with the contract as set forth in the listing contract and in the offer to buy, and (2) that plaintiff had earned his commission immediately on submission of the offer to defendant. The facts are for the most part undisputed.

J. Albert Murphy was a licensed real-estate broker with offices in Des Moines, Iowa. Blair Bott was a licensed real-estate salesman for the J. Albert Murphy Realty Company. On February 2, 1960, plaintiff entered into a written contract with defendant whereby defendant listed for sale a coin-operated laundromat for the sum of $25,000, $6000 cash to be paid down, and the balance of $19,000 to be paid at the rate of $350 per month with interest at 6%. Plaintiff was to receive as his commission 10% of the sale price if he found "a buyer who shall be ready, willing and able to purchase during said [three-month] period upon the price and terms" stated. Subsequent to the submission of two unacceptable offers, on February 9, 1960, plaintiff's agent Bott obtained the involved written offer to buy the laundromat from D. F. Schultze and Allyne Schultze. Earnest money of $1500 was recited therein, which was made up of $500 cash paid by the offerers and $1000 advanced by credit from plaintiff's commission. The balance of the $6000 down payment required, $4500, was available in cash in the bank and was to be delivered to the seller when the formal contract was signed by the parties.

When the offer was presented to the defendant on February 10 he indicated he did not want to sell. After two other efforts to get defendant's acceptance, Mr. Bott and Mr. Murphy saw defendant on February 11 at Granger, Iowa, and showed him the written offer. Brown again refused to accept it, contending he wanted to see the buyer and get legal advice. Plaintiff then, in writing, demanded his commission under the listing contract. Although warned by plaintiff that the offer might be withdrawn, defendant did not sign the contract. Later that same evening, and subsequent to a visit by the plaintiff and a telephone call from the defendant, Mr. and Mrs. Schultze withdrew their offer.

For convenience herein, Mr. and Mrs. Schultze will be referred to as the "buyer."

I. It is the general rule in most all jurisdictions that once a broker has procured a person who is able, ready and willing to purchase the property on the terms offered by the owner, the broker is entitled to his commission, even though the failure to complete the contract is due to the default or refusal of the employer. 8 Am. Jur., Brokers, section 184, page 1097; 12 C. J. S., Brokers, section 85, page 187; Annotation, 43 L. R. A. 595 et seq., and annotation in 169 A. L. R. 607 et seq; Blunt v. Wentland, 250 Iowa 607, 611, 93 N.W.2d 735, 736, and citations. We recognized this rule early in Cassady v. Seeley, 69 Iowa 509, 510, 29 N.W. 432, when we said: "We understand the law to be that if an agent or broker is employed to sell property at a stated price, and he finds a customer who is able and willing to take the property at that price, and upon the stated terms, he is entitled to compensation, whether a sale is effected or not." We have never defected from that rule. Also see Brown v. Wilson, 98 Iowa 316, 67 N.W. 251.

II. The principal must have an adequate ground or valid excuse for refusing to complete the transaction in order to defeat the broker's right to a commission; it must not be arbitrary, capricious, unreasonable, or wrongful. Blunt v. Wentland, supra, 250 Iowa 607, 611, 93 N.W.2d 735, and citations; 12 C. J. S., Brokers, section 95a(2), pages 223 and 224. While it is the broker's burden first to show he procured a buyer ready, able and willing to buy under the terms and con-

ditions of the listing contract, it is thereafter the seller's burden to show an adequate ground or valid excuse for his refusal to complete the transaction. Here his grounds were two, namely, that the buyer was not shown "able", and that he, as seller, was not allowed a reasonable time to accept the offer. He contends that, while on the face of the offer there was compliance, under the facts the buyer was not "able" to meet the listing requirement of furnishing a $6000 down payment.

■ The term "able" as used herein ordinarily refers to financial ability. It is stated succinctly in 12 C. J. S., Brokers, section 85, page 193, in this language: "Furthermore, the financial ability required of a customer, to entitle the broker producing him to a commission, is his ability to meet the terms of the sale * * * and is not necessarily solvency or ability to respond in damages." There is no serious question here as to the buyer's financial responsibility.

There is ample evidence to sustain the trial court's finding that the buyers were responsible persons, and that defendant was aware of that fact at the time he refused to act on the offer. Defendant admitted on cross-examination that "There is no question in my mind that Mr. Schultze is a responsible man * * *." The record also discloses that Schultze had made previous offers to defendant, and had gone over the defendant's books at the laundromat previous to the offer here involved. Clearly, there was ample opportunity for defendant to satisfy himself of the buyer's responsibility.

■ Regardless of the buyer's financial responsibility generally, the defendant argues that as a matter of law the buyer was not shown "able" to perform the terms of the listing contract. The proposed buyer, he contends, did not at that time actually have the required $6000 cash down payment, and that plaintiff's gift of $1000 by way of "splitting" his commission was not only improper but established the fact that the buyer could not meet the requirement that he had a $6000 down payment. He cites Dent v. Powell, 93 Iowa 711, 61 N.W. 1043, to the effect that an agent cannot collect a commission unless he affirmatively proves the buyer had the actual cash to make the payment. Plaintiff does not dispute that rule, but contends,

as a result of his gift or advancement, the buyer was shown to have a $6000 cash down payment.

It is true plaintiff gave the buyer $1000 credit on the $1500 earnest money recited in the offer, and with that credit the buyer needed only to show that an additional $4500 was immediately available to complete the $6000 down payment. While the buyer advances only $5000 in cash, did the fact that the seller's broker loaned or credited the offerer $1000 satisfy the requirement of a $6000 down payment? This, of course, is the vital question involved. In support of his contention that it cannot satisfy such requirement, defendant urges that the so-called gift from his agent's commission breached the fiduciary relationship of trust and confidence required between a principal and agent, and thus voided the listing contract.

Unless there was something within the relationship between the principal and the agent which would prevent the agent from loaning or giving the buyer the $1000 necessary to meet the $6000 amount required, it would seem immaterial how the offerer procured the $6000. He had it when the offer was submitted.

Defendant maintains, however, that the buyer could not include any sum to be earned as a commission because of the fiduciary relationship between seller and broker which permits him to avoid any liability for the commission. Thus he says the offer was $1000 short. In answer to that contention the trial court said it "fails to see where this [gift] prejudiced Mr. Brown in any manner whatsoever as he was getting the full purchase price as set forth in the listing contract", that "where the extra thousand dollars came from did not concern Mr. Brown who had obligated himself by express contract to pay 10% commission, and the authority of the agent had not been revoked and the offer had not been withdrawn at the time the commission was earned." While such a general conclusion may be subject to some modification under other circumstances, under the circumstances disclosed here we must agree. For a general discussion of this matter, see 12 C. J. S., Brokers, section 85, page 193; Newis v. Topfer, 121 Iowa 433, 96 N.W. 905; Restatement of the Law of Agency, Second Ed., section 389.

III. It is true that unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency without the principal's knowledge. 12 C. J. S., Brokers, section 85, page 193; 8 Am. Jur., Brokers, section 184, page 1097; Newis v. Topfer, supra. It is so stated in the Restatement of the Law of Agency, Second Ed., section 391. Was this such an act on behalf of an adverse party? Under Comment(b) in the Restatement we find this reference to the exact situation before us: "An agent can properly deal with the other party to a transaction if such dealing is not inconsistent with his duties to the principal. Thus, an agent employed to sell can properly lend money to the buyer to complete the purchase or he may 'split' his commission with the buyer, unless because of business policy or otherwise it is understood that he is not to do so."

It is hard to see where the plaintiff's acts herein were inconsistent with his duties to the principal. He was to find a financially responsible buyer, able to pay down $6000 and assume the balance of the obligation. The trial court found as a matter of fact that this type of business is known to favor a very practical approach to its problems, that furnishing a part of the down payment from the broker's commission "did not under the law or the ethics of the real-estate profession disclose such bad faith or gross misconduct on their part as to warrant forfeiture of their right to commission." We agree, and conclude there is nothing in the record to justify a finding of bad faith or gross misconduct as a matter of law. Neither the business policy nor the understanding of the parties prohibited that act by the plaintiff. Actually it may be said that by this sacrifice of a part of his commission he was furthering his principal's interest in obtaining a sale for him under the exact terms he desired. A sound rule to follow in such matters was announced in Murphy v. Albany Pecan Development Co., 169 Iowa 542, 151 N.W. 500, cited by defendant, to the effect that the agent must act as he judges the interest of his employer would induce the latter to act if he were present. 8 Am. Jur., Brokers, section 86, pages 1035, 1036. If, then, we assume the principal desired to sell on the terms listed, these terms were met without prejudice to the principal and without

gain to the agent. Although it is true this advancement or gift of commission to the buyer was not disclosed to the seller, it is hard to see how he thereby suffered any detriment, and there is not the slightest inference of fraud or deceit in this record to justify a denial of plaintiff's right to his commission. The conclusion must be that $1000 of the agreed commission could be included in the amount of the down payment of the buyer under these circumstances.

This is not the situation where the agent is shown to act in his own interest, or to obtain compensation from both parties, or to do acts detrimental to his principal, or where he attempts to bind his principal to an unauthorized agreement. It is not claimed the broker had any right to sell the laundromat, only that he was to find and obtain an offer from a buyer able, ready and willing to buy on the listed terms. The cases cited by defendant to sustain the propositions above are therefore inapplicable.

 IV. Finally, defendant contends that he had a reasonable time in which to accept or reject the offer, and that within that time the offer was withdrawn. It is true, as a general rule, an owner is entitled to a reasonable opportunity for investigation as to the offerer's ability to comply with the contract (12 C. J. S., section 85, page 194), yet under the circumstances disclosed by the record defendant's claim for time to satisfy himself as to the responsibility of Mr. and Mrs. Schultze has no merit. He had had that opportunity here and, when he did not accept the offer on February 10 or 11, defendant alone assumed the risk of a withdrawal. Raymond v. Stinson, 196 Iowa 881, 195 N.W. 588. It is true defendant was not required to sign the agreement at that time, but whether he did so or not, the commission had been earned. See annotation, 169 A. L. R. 607; Curtiss v. Waterloo, 38 Iowa 266; Kelley, Maus & Co. v. Hart-Parr Co., 137 Iowa 713, 115 N.W. 490; Blunt v. Wentland, supra.

The trial court apparently felt defendant's real purpose in refusing to sell on February 11 was revealed in cross-examination when he answered "Not exactly" when asked if his request for time was not to get legal advice on how to reject the offer. There is an implication at least that such was the fact, and of

course such an excuse would not relieve defendant from his liability under the listing contract. We conclude no valid excuse appears and that plaintiff became entitled to his commission when the offer was duly submitted February 11 prior to the withdrawal of the offer.

V. The able trial court concluded that since the plaintiff had voluntarily waived $1000 of his commission in order to make the deal both for himself and for the defendant without injury to the defendant, the commission due him should not be 10% of $25,000, or $2500, but $2500 less $1000, or $1500. This the court observed amounted to 6% of $25,000, which it found Brown at one time had told the plaintiff he would consider if the down payment was only $5000. The judgment rendered against the defendant in the sum of $1500, with interest from date and costs, we hold, completely satisfies plaintiff's claim herein, and must be affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.