### 15613.  HOUSER *v.* VOSE *et al.*

Where a real-estate owner told a broker with whom he had listed it for sale that he would exchange it for a certain unimproved lot owned by another person, as suggested by the broker, if the other person would, within a stated time, offer to make the suggested trade, and where the broker obtained from the other person within that time a written offer for such an exchange, no such variance between the terms of the parties as would prevent a recovery of the broker's commission was created by the following provisions of the written offer:  "Interest and insurance to be prorated.  This trade is made subject to the approval of titles to all property concerned.  It is agreed that the vendor shall furnish good and marketable title to said property, and purchaser shall have a reasonable time in which to investigate same.  In the event the title is objected to, the vendor shall be furnished with a written statement of all objections and be allowed a reasonable time thereafter in which to furnish valid title."  The provisions as to title amounted to nothing more than the law implied.  The same is true of the provision as to prorating interest,—that is, that interest should be settled for by the party owing it.  The provision as to insurance could not have operated against the

defendant, the lot offered to him being unimproved; and the provision
that objections to title should be in writing did not constitute a material
variance.

DECIDED FEBRUARY 12, 1925.

. Certiorari; from Fulton superior court—Judge Ellis.   March
19, 1924.  ·

*McElreath & Scott,* for plaintiff in error.

*H. A. Etheridge,* contra.

JENKINS, P. J.   The defendant owner of improved real estate
orally listed the property for sale with the plaintiffs as real-estate
brokers.   While the property was in the hands of the brokers for
sale, one of them stated to the owner that he thought he had a
prospect who would exchange an unimproved lot for the equity
owned by the defendant in his real estate.   The defendant owner
stated to the broker that he would trade as suggested, provided that
the offer be made by noon of that day.   The brokers, prior to the
expiration of the time limit, telephoned to the office of the owner
that the trade had been agreed upon, and in a few minutes after
twelve o'clock saw the owner in person, and presented to him a
signed offer from the prospective purchaser, whereupon, according
to the testimony in the case, the owner declined to consummate
the trade, giving as his reason that he had given an option on the
property to another, and that it "did not belong to him any way."
The written offer submitted by the brokers from the prospective
purchaser was in accordance with the terms of the oral listment,
unless there was a difference by reason of the following provisions
contained in the written offer:   "Interest and insurance to be pro-
rated.   This trade is made subject to the approval of titles to all
property concerned.   It is agreed that the vendor shall furnish
good and marketable title to said property, and purchaser shall
have a reasonable time in which to investigate same.   In the event
the title is objected to, the vendor shall be furnished with a
written statement of all objections and be allowed a reasonable time
thereafter in which to furnish valid title."   A verdict in favor of
the brokers, for the commissions claimed, was obtained in the
municipal court.   The defendant's certiorari was overruled by the
superior court.   It is contended that, the provisions quoted not
having been mentioned in the terms of the oral listment, there was
a variance between it and the offer, and that therefore the brokers
were not entitled to their commissions.

1. "The general rule, in the absence of a different agreement, is that a real-estate broker in whose hands property is placed for sale earns his commissions when, during the agency, he finds a purchaser ready, willing, and able to buy, and who offers to buy on the terms stipulated by the owner." *Winer* v. *Flournoy Realty Co.,* 27 *Ga. App.* 87 (1) (107 S. E. 398).

2. If it be taken that the terms of the offer failed to conform to the terms of the listment, the fact that the owner did not then and there base his refusal upon such discrepancy would not estop him from setting up such a ground of defense, under the principle of the rulings made in *Fenn* v. *Ware,* 100 *Ga.* 563 (28 S. E. 238), and *Winer* v. *Flournoy Realty Co.,* supra, since "the rule which prevents one who has given a reason for his conduct and decision in a matter from placing his conduct upon another and different ground after litigation has begun is but an application of the principle of estoppel in pais, and applies only where his conduct has caused another to act respecting the matter to the injury and detriment of the latter, and where the latter would be placed at an inequitable disadvantage should the former be allowed to rely upon a ground other than that urged as a reason for his conduct and decision in the matter." *Union Brokerage Co.* v. *Beall,* 30 *Ga. App.* 748 (1) (119 S. E. 533). In the *Fenn* case and the *Winer* case, supra, there had been an acceptance of the offer made by the owner, and in each of those cases the failure of the offer to conform to the terms of listment or to the terms of the acceptance might have been obviated by the broker had such a ground of objection been promptly assigned; whereas in the instant case, while the offer was submitted in general terms over the telephone before the expiration of the time of listment had expired, the terms of the offer were not themselves submitted until after its expiration.

3. Ordinarily the only implication in an executory contract for the sale of land is the promise to convey good title. This term imports no more than a marketable title, or one free from reasonable doubt,—that is, not only a valid title in fact, but one that can readily be sold to a reasonable purchaser. Accordingly, a distinction has been recognized between a good and marketable title and a title such as may be approved by the owner. *Winer* v. *Flournoy Realty Co.,* supra. The provision in the instant case, however, that the trade was subject to approval of titles to all property concerned,

was qualified by the clause immediately following, to the effect that the vendor was to furnish good and marketable title, that is to say, the right of the purchaser to disapprove the title was limited by the further provision contained in the written offer. Thus, construing the two provisions together, the offer as actually made amounted to nothing more than what the law would of itself have implied.

(*a*) The provision that interest should be "prorated,"—that is, that any lien as to interest should be settled for by the party owing it,—is nothing more than what the law would of itself imply. The provision that the insurance should be prorated could not possibly have militated against the rights of the defendant. The lot of the proposed purchaser being unimproved, the fact that the insurance maintained by the defendant should be paid for by the prospective purchaser worked in his favor and to his interest alone.

(*b*) The word "vendor" as contained in the written offer to purchase is made to refer throughout to the defendant owner, but even assuming, inasmuch as both parties to the proposed contract were in a sense "vendors," that the terms of the offer quoted, with reference to having a reasonable time in which to investigate the titles, and that the vendor shall be furnished with a written statement of all objections, and be allowed a reasonable time thereafter in which to furnish a valid title, refer to each of the parties alike, such a reasonable and necessary provision should not and could not be construed as a material addition to the oral contract of listment which was in the minds of the contracting parties. That a person under contract to purchase should reject the title and fail or refuse to give his reason therefor is in and of itself unreasonable; and consequently the provision that the reasons should be stated is nothing more than what could reasonably be said to have existed in the minds of the contracting parties. Nor could the fact that the offer provided that such objection be in writing be reasonably taken as constituting such a variance as should work a forfeiture of the commissions which the broker had fairly earned.

*Judgment affirmed. Stephens and Bell, JJ., concur.*