GREGG *v.* ENGLAND LOAN COMPANY.

Opinion delivered October 4, 1926.

1. SPECIFIC PERFORMANCE—AGREEMENT TO BID.—An agreement to bid a certain amount at a foreclosure sale if the mortgagee would foreclose is not an agreement to purchase, and hence the mortgagee could not enforce specific performance.

2. CONTRACT—CONSIDERATION.—Where defendants agreed to bid a particular amount at a foreclosure sale if the mortgagee would authorize a certain attorney to institute the foreclosure proceedings, *held* that the employment of such attorney was not an essential part of the contract, or, if so, was sufficiently complied with by his employment, though he was subsequently discharged by the mortgagee.

3. CONTRACTS—WAIVER OF BREACH.—In an action for breach of a contract to bid a certain amount at a foreclosure sale, provided a certain attorney should be employed to institute the proceedings, defendants will be held to have waived such provision where another attorney was substituted, and defendants offered no objection thereto, but appeared at the sale and offered a bid for a less amount than agreed.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*D. K. Hawthorne,* for appellant.

*McMillen & Scott,* for appellee.

WOOD, J. This is an action in the chancery court by the appellee against the appellants. The facts are stated by counsel for appellants as follows:

The England Loan & Trust Company loaned Charles E. Taylor $3,000, and, as security therefor, took notes secured by a deed of trust on certain lots in Weil's Addition to the city of Little Rock. Default was made in payment of said notes and interest thereon, and the appellant, Gregg, entered into a contract with the appellee wherein he agreed that he would bid enough at the sale of the lots by foreclosure of the said deed of trust to pay the amount of the debt due thereunder, including improvement taxes, State and county taxes, interest, and costs, provided the appellee would authorize D. K. Hawthorne to foreclose the deed of trust, and he agreed to pay D. K. Hawthorne such fee as he might charge for the foreclosure proceedings. Appellant Harrington guaranteed the performance of this contract. Pursuant to this agreement, the appellee authorized D. K. Hawthorne to bring suit to foreclose the deed of trust on the property, and he brought the suit. The appellee became dissatisfied with the progress of the suit, and requested Harrington to authorize the substitution of Andrew H. Scott for D. K. Hawthorne. Harrington agreed to this, provided it was satisfactory to Gregg. The England Loan & Trust Company then authorized A. H. Scott to bring suit to foreclose the mortgage, and he brought the suit after suit had already been filed by D. K. Hawthorne.

Decree was rendered in the second suit, and the property was advertised for sale. Appellant Gregg saw the advertisement of the sale the day before the sale was to take place, and called his attorney's attention to it. After investigation it was discovered by Mr. Gregg that Scott & McMillen had brought a second suit to foreclose the deed of trust given by Taylor to the England Loan &

Trust Company, and that a decree had been rendered thereunder, and the sale advertised to take place the next day. At this sale the property was struck off to Frank B. Gregg, but, on account of some difference between him and W. E. Harrington, he declined to take the property. Inasmuch as Mrs. Frank B. Gregg had not been made a party to the original complaint, a supplemental complaint was filed, making her a party, and in due course of time a decree was taken authorizing the foreclosure of the mortgage, and, at the sale under this second decree, the England Loan & Trust Company, now the England Loan Company, bid the sum of $3,050, and there was then due the England Loan Company the sum of $3,890.08.

At a later time the England Loan Company sued W. E. Harrington and Frank B. Gregg, alleging a contract with Frank B. Gregg, guaranteed by W. E. Harrington, in which Gregg agreed to bid enough at the sale of the property to protect the England Loan Company from loss, and alleging that the loan company purchased the property at the sale and tendered a deed to the appellants, and asked that they be required to accept it and pay the sum of $5,813.92.

The appellants agreed to bid enough at the sale of the property under foreclosure proceedings to protect the appellee, provided D. K. Hawthorne was authorized to bring the foreclosure proceedings. After these foreclosure proceedings were brought by him, the appellee talked with Harrington and obtained his consent to substitution of attorneys, provided it was agreeable to Mr. Gregg. Mr. Gregg, however, was never consulted about the substitution, and knew nothing of it until the day before the sale of the property under the foreclosure proceedings brought by Scott & McMillen. Default had been made under the terms of the deed of trust executed by Charles E. Taylor to the England Loan & Trust Company at the time Gregg wrote the letter to it proposing to bid at the sale of the property, if foreclosure proceedings were brought by D. K. Hawthorne.

A stipulation in the record shows that the difference between the amount due. the appellee by Charles E. Taylor and others on September 28, 1923, the date of the last sale of the property, and the amount bid by. appellant Gregg at that sale, together with the attorney's fee of $150, amounted to the sum of $990.08. The trial court entered a decree for that sum, from which is this appeal.

1. The undisputed testimony shows that there was no agreement upon the part of the appellants to purchase the property. The agreement, as shown by the letter of Gregg, was that he would bid enough at the sale of the lots by foreclosure of the trust deed to pay the amount of .the debt due the appellee thereunder by Taylor and others, including improvement, State and county taxes, interest, costs and attorney's fee, provided the appellee would authorize D. K. Hawthorne to foreclose the deed of trust. Under this agreement the appellants could not be required to purchase the property, and therefore the court correctly held that the appellee was not entitled to specific performance. The appellants, however, contend that they are not liable because the appellee violated the contract in substituting the attorney Andrew H. Scott for D. K. Hawthorne, and in authorizing the foreclosure proceedings, after such substitution, to be conducted by. the. firm of Scott & McMillen instead of D. K. Hawthorne, as the contract contemplated.

We are convinced that the appellee did not violate its contract in the substitution of attorney Scott for attorney Hawthorne. This substitution was made on the authority of Harrington, as shown by the testimony of the appellant, Gregg. While Gregg was not informed of this substitution until the day before the sale, nevertheless he knew that the substitution had been made, and he did not on that account refuse to bid on the property, but, on the contrary, did bid for himself and associates the sum of $3,000. This change of attorneys was not a material alteration of the contract. The consideration of the contract moving from the appellee to the appellant

Gregg was the institution of the suit for foreclosure. That was the real purpose and the real consideration for the agreement. That was carried out on the part of the appellee. The testimony of Gregg showed that it was the agreement between him and Harrington that they were to obtain the lots and divide them, but they didn't get together on the deal and didn't complete the purchase of the lots because of this failure to agree upon a division after the sale. Although the letter specified that the suit of foreclosure was to be instituted by D. K. Hawthorne and that the appellant Gregg was to pay his fee, this did not constitute Hawthorne the attorney of appellant Gregg. On the contrary, he was employed to institute the action for the appellee, and was the appellee's attorney, and appellee had the right to control the litigation and to discharge its attorney if he was not satisfactory to it, and to substitute another in his stead. The appellee complied with its contract in employing Hawthorne to institute the first action for foreclosure, and did not violate its contract in substituting another attorney to conduct the litigation when it deemed it advisable to do so. It is apparent that the naming of Hawthorne as the attorney to institute the action for foreclosure in appellant Gregg's letter was a mere incident and not the consideration, or, at least, not a material part of the consideration for the contract. It occurs to us that the appellee had the right to assume, upon obtaining Harrington's consent to the change, that there would be no objection upon the part of the appellants because there was a change and substitution of attorney Scott for attorney Hawthorne. We are persuaded that there was no breach of contract on the part of the appellee, because the real object which the parties had in mind, and the real consideration therefor, as we have stated, was the foreclosure, which was had.

2. But, if we are mistaken in this, unquestionably the conduct of Gregg, after he learned of the substitution, in not making any protest or objection to the appellee on that account, and in not giving the appellee an oppor-

tunity, as plaintiff in the foreclosure, to hold up the sale and to dismiss the action to foreclose, and in his appearance at the sale and bidding the amount he agreed to bid, and the express authority given by Harrington to substitute attorney Scott for attorney Hawthorne, all clearly constitute a waiver on the part of the appellants of any violation of the contract on the part of the appellee, if any, in the substitution of one attorney for another. See *Grayson-McLeod Lbr. Co.* v. *Scott,* 102 Ark. 79.

The decree is in all things correct, and it is therefore affirmed.