## BUCKNER et al. v. TWEED.
### No. 309.

Municipal Court of Appeals for the District of Columbia.

Oct. 17, 1945

Ben Lindas, of Washington, D. C., for appellants.

Arthur J. Hilland, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON, Associate Judge.

CAYTON, Associate Judge.

This case is here for the second time. The first appeal[1] was brought by Fred A. Tweed, whom the trial court had denied a commission for the sale of defendants' property. We ordered a reversal and on the second trial Mr. Tweed prevailed. Mr. and Mrs. Buckner now appeal.

The evidence in the first trial was set out in some detail in the opinion we delivered on the prior appeal. In brief it was as follows: Tweed, having been employed by Mr. and Mrs. Buckner to find a purchaser for their property, procured and submitted a signed contract at a sale price of $16,950. It provided for a cash payment of $3,500, the purchaser to place a first trust of $11,-000 and give the vendors a second trust of

---

[1] Tweed v. Buckner et al., D.C.Mun. App., 39 A.2d 203.

$2,450. The property had originally been subject to a deed of trust for $9,500 which had at the time of the sales contract been reduced to $6,100 and was payable in installments over a period of years. This trust was to be paid off with the proceeds of the new first trust and the balance of such proceeds was to be paid to the vendors. After the contract had been signed, Tweed wrote on the back of one of the copies an endorsement that the vendors were not to pay any bonus for releasing the first deed of trust. The purchaser later agreed to contribute not more than $43 for such purpose. The holder of the trust notes refused to permit accelerated payment of the balance due, but offered to increase the loan to the original sum of $9,500. The purchaser agreed to accept such loan and to pay in cash the $1,500 difference between that amount and the $11,000 first trust provided for in the contract.

The parties met at the title company and the purchaser offered to execute the necessary papers, to make the $3,500 cash payment and to pay the $1,500 just mentioned.

The vendors refused to settle on the ground that the contract called for a first trust of $11,000 and not $9,500. The parties agreed to meet at the title company again, twelve days later, to settle the matter. At the first meeting the deed was executed and deposited with the title company with a letter of instructions containing the following language:

" * * * This deed is not to be recorded unless and until the terms of the contract of sale dated April 18, 1943 are strictly complied with by the purchasers, i.e., that they place a first lien deed of trust on the property of $11,000; a $3500 cash payment; the balance secured by a deferred purchase money trust; * * *."

But six days later the vendor called at the title company and withdrew the deed and letter of instructions.

When the parties had their second meeting at the title company, vendors again insisted that the purchaser secure a release of the existing first trust without cost to them and place a new trust of $11,000. They refused to proceed with the settlement.

■ In our decision we reiterated the familiar rule that in order to earn a commission a broker must produce a purchaser ready, able and willing to purchase upon vendor's terms.

■ We held that performance of a broker's undertaking may be evidenced by an executed agreement of sale, by submission of an acceptable offer which the principals refuse to accept, or by production of a purchaser ready, able and willing to purchase upon the authorized terms.

■ We also held that where no detriment to the vendor resulted, a variance between the purchaser's offer and the authorized terms may be so inconsequential as to make the vendor's refusal to complete the sale capricious; and that such variance can not deprive the agent of his commission.

■ Analyzing the owners' contention that they were entitled to a deed of trust of $11,000 and not one of $9,500 with the difference in cash, we pointed out that there would be no resulting diminution in the amount of cash they would receive in the settlement. Computing the amounts involved, we demonstrated that under either arrangement the $3,500 down payment was not affected and that the cash differential on the settlement would be the same. Also, we pointed out that the second trust which the purchaser was required to give would, under the tendered arrangement, have been subordinate to a first trust lien of $9,500 instead of one of $11,000—an advantage to the vendors.

We explained that though an agent is required to find a purchaser on the "identical" terms authorized by the owner,[2] a deviation from such terms must, in order to defeat an agent's claim for commission, be substantial as well as detrimental to the owner. Finally, we held that the claimed variance between the deed of trust tendered by purchaser and that provided in the contract was trivial and inconsequential and that the owners' refusal to complete the sale was without legal justification.

Studying the evidence at the second trial, we find it was substantially the same as that produced when the case was tried before. The only new matter of any consequence arose when defendants obtained leave to amend their answer in order to allow evidence of alleged breach of trust on the part of Tweed. Such evidence was received; but it was sharply contradicted and thus left the question strictly one of fact.

---

[2] Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599; Battle v. Price, 63 App.D.C. 326, 72 F.2d 377.

Aside from the matters we decided on the first appeal only two arguments merit consideration now. Appellants through their new counsel advance the argument that the failure of the sale was due to acts of Tweed himself. But the evidence does not support the contention.

They argue also that there was never a valid tender by the purchaser, either of the trusts or of the necessary cash to close the deal. But we think this defense is not available to them in view of their withdrawal of the deed from the title company and their flat refusal to proceed with the settlement. Under these circumstances a repeated and more formal tender by the purchaser would have been useless. The law does not require futile gestures.

Our study of the record satisfies us that the case was carefully tried and correctly decided.

Affirmed.

The CHIEF JUDGE sat during the argument of this case and agreed with the foregoing opinion, but died before its publication.

