**BUCKNER et al. v. TWEED.**
No. 9128.

United States Court of Appeals
District of Columbia.

Argued May 21, 1946.

Decided Sept. 16, 1946.

Mr. Arthur L. Willcher, of Washington, D. C., with whom Mr. Ben Lindas, of Washington, D. C., was on the brief, for appellants.

Mr. Arthur J. Hilland, of Washington, D. C., for appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal by the defendants from an affirmance by the Municipal Court of Appeals for the District of Columbia of a judgment for a real estate broker in a suit for a commission. 44 A.2d 224.

Appellants had employed appellee, the broker, to find a purchaser for their property at $19,500. He procured and submitted to them a signed offer in the form of a contract, dated April 18, 1943, at a price of $16,950. This contract provided that the purchaser was to place a first trust of $11,000 on the property, pay appellants $3,500 in cash, and give them a second trust for the balance, which was $2,450. It also provided that the property was to be sold free of encumbrances. Settlement was to be in 30 days. Appellants signed this contract.

Appellee wrote on appellants' copy of the contract, but not on the purchaser's copy, an endorsement to the effect that appellants were not to pay any bonus for releasing an existing first trust. The purchaser afterwards promised to pay "not over $43" for the purpose of releasing that trust. In the view we take of the matter, we need not decide whether these variations deprived the contract of binding force as between appellants and the purchaser.

To place a first trust of $11,000 it would have been necessary to pay off an existing first trust of $6,100. The holder of the outstanding trust notes refused to accept payment, which was not yet due, but offered to increase the loan to $9,500. This was acceptable to the purchaser. The parties met

on May 6, 1943 to close the sale. The purchaser proposed to execute a first trust of $9,500 and if appellants desired, to pay the entire balance of the purchase price in cash. Appellants declined this proposal, on the grounds that the contract called for a first trust of $11,000 and that no second trust to them had been prepared. Appellants nevertheless executed a deed and deposited it with the title company together with these instructions: " * * * This deed is not to be recorded unless and until the terms of the contract of sale dated April 18, 1943, are strictly complied with by the purchaser, i. e., that they place a first lien deed of trust on the property of $11,000; a $3500 cash payment; the balance secured by a deferred purchase money trust * * *." The parties agreed to meet again at the title company's office on May 18 to close the sale. On May 12 either appellee or the purchaser ordered from the title company a second trust deed of $2,450 from the purchaser to appellants. That deed was duly prepared. But on May 12 appellants withdrew their deed from the title company. At the meeting on May 18 appellants, without tendering a deed, again insisted that the purchaser secure a release of the existing first trust and place a new trust of $11,000, and refused to proceed on any other basis. As appellants state in their brief, efforts to complete the sale failed "because the existing first trust was not released, thereby making it impossible to place a new first trust for $11,000".

◼ Appellee was entitled to a commission if he produced a purchaser ready, willing and able to buy upon appellants' terms. A material deviation from those terms would defeat appellee's claim.[1] The contract of April 18 as modified by the endorsement on appellants' copy, whether or not the contract was valid as between appellants and the purchaser, stated appellants' terms. The question is whether the plan which the purchaser was ready to carry out did or did not deviate materially from those terms.

◼ If the terms of the contract with its endorsement had been strictly carried out, appellants would have received (1) $3,500 in cash provided by the purchaser; (2) $4,900 additional cash, consisting of the difference between the existing $6,100 first trust and the proceeds of a new $11,000 first trust; and (3) a $2,450 second trust subordinate to an $11,000 first trust. By the plan which the purchaser was ready to carry out appellants would have received (1) $3,500 in cash provided by the purchaser; (2) $4,900 additional cash, consisting of (a) the $3,400 difference between the existing $6,100 first trust and the proceeds of a new $9,500 first trust and (b) $1,500 additional cash provided by the purchaser; and (3) a $2,450 second trust subordinate to a $9,500 first trust. Thus appellants were to receive the same amount of cash, and also the same amount in second-trust notes, under the two plans. The only difference in what appellants were to receive was that their second trust would have been better secured by the purchaser's terms than by the contract terms, since it would have been junior to a $9,500 trust instead of being junior to an $11,000 trust.

◼◼ Thus the purchaser not only met but bettered appellants' terms as stated in the contract and endorsement. Appellants are in much the same position as a man who refuses to accept $101 because his contract called for only $100. Perhaps appellants might, by inserting in the contract language plainly indicating that they desired the weaker security and would not be satisfied with a stronger one, have made it material that their trust be junior to a lien of $11,000 and not merely to a lien of $9,500. But so improbable an intention cannot be read into the actual language of the contract, which was simply that "the purchaser is to place" a first trust of $11,000. In form, that language was a mere statement of what the purchaser would do. In purpose and therefore in effect, it was not a condition upon which appellants insisted but a privilege which they allowed the purchaser. Appellants were consenting that their deferred purchase-money trust of $2,450 might be junior to a trust of $11,000; in other words, that the purchaser might raise $11,000 by

---

[1] Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599.

placing a prior encumbrance on the property. A deviation which is either trifling [2] or, as here, wholly favorable to the seller, from a term to which the seller has consented for the benefit of the purchaser, does not defeat the broker's right to a commission. He does not forfeit his commission by procuring from the purchaser either more money [3] or more security than the seller has consented to accept. Appellants could not, by the instructions which they gave to the title company, turn the purchaser's privilege into a requirement, so far as the broker's rights are concerned.[4]

Appellants urge that a tender by the purchaser was necessary. Appellants' refusal to proceed on the basis of a $9,500 first trust would have dispensed with any such requirement,[5] even apart from the fact that appellants tendered no deed.[6] Moreover the purchaser's rights are not in issue here.

Appellants' other contentions are also without merit.

Affirmed.

---

[2] "Nowhere would a departure from full performance of a condition be regarded as important if the departure were an inconsiderable trifle having no pecuniary importance". 3 Williston, Contracts, § 805; cf. 842. Pacific-Wyoming Oil Co. v. Carter Oil Co., 31 Wyo. 314, 226 P. 193; Porter v. Traders' Ins. Co. of Chicago, 164 N.Y. 504, 58 N.E. 641, 52 L.R.A. 424; Gregg v. England Loan Co., 171 Ark. 930, 287 S.W. 161; Houser v. Vose, 33 Ga. App. 451, 126 S.E. 869.

[3] Spears v. Carter, 224 Mo.App. 726, 24 S.W.2d 717.

[4] Restatement of the Law of Agency, § 445d.

[5] Simmons v. Swan, 275 U.S. 113, 48 S. Ct. 52, 72 L.Ed. 190; 6 Williston, Contracts, § 1819; Restatement of Contracts, § 306.

[6] Judkins v. Charette, 255 Mass. 76, 151 N.E. 81, 45 A.L.R. 1; 4 Williston, Contracts, § 924; 27 R.C.L. 522.