## STARK v. SHERTZER.

No. 968.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 27, 1950.

Decided. Dec. 12, 1950.

---

4. Cf. Fleming v. Malouf, D.C.W.D., N.Y., 7 F.R.D. 56.

5. Lalekos v. Manset, D.C.Mun.App., 47 A. 2d 617; King v. McKnight, D.C.Mun. App., 61 A.2d 714.

Herman Miller, Washington, D. C., for appellant.

Everett M. Raffel, Washington, D. C., with whom Carey E. Quinn, Washington, D. C., on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

A jury awarded plaintiff a broker's commission after he had produced a purchaser ready, willing and able to buy defendant's house on terms claimed to be equivalent to those contained in a written agreement signed by both seller and buyer. Defendant refused on the settlement date to complete the transaction and now appeals from the judgment entered on the verdict.

Defendant's principal defense was that, although she signed the sales contract, she had not read it herself but that plaintiff at her request read it to her and in doing so misrepresented the time within which a second trust which she was to receive as a part of the sale price would become due. The contract actually provided that $5,000 of the $7,200 second trust would become payable in 15 years from the date of the note, whereas defendant claimed that she understood that such $5,000 was to be paid "four or five years" from the sale. The point became important because the signed contract provided that the second trust note (outside of the $5,000 payment at the end of 15 years) would be payable in installments of $30 a month, which was just sufficient to pay the interest of 5% called for by the contract.

Plaintiff, on the contrary, testified that he had not only showed defendant the contract and read it to her accurately but explained to her that she would have to consider the second trust payments as an annuity, that the buyers could pay no more, and that she had signed the contract knowing exactly what it provided. Defendant is a mature woman, employed as a clerk in a Government office, and no claim is made that she is handicapped mentally or physically.

A further defense had to do with the first trust on the property. Prior to the transaction there was a first trust encumbrance in the amount of $5,578, with interest at 6%, payable, principal and interest, at the rate of $54 a month. Such trust was held by a building and loan association and had been outstanding in varying amounts for approximately ten years. The sales contract signed by the parties provided that the purchaser was to assume "a first deed of trust" secured on the premises in the approximate amount of $5,500, interest at 5%, payable principal and interest in installments of $40 a month. This particular building and loan association refused to reduce the payments below $42 a month or to reduce the interest rate, and therefore the broker arranged with another building association to pay off the old first trust and substitute therefor a new one in the amount of $5,600, at 4½% interest, payable at $40 a month. The making of the latter commitment was confirmed by an officer of the second building and loan association. Defendant claimed she wanted to continue to do business with the first association because she had confidence in it. No evidence was introduced as to any difference in the reputation or standing of the two associations.

Defendant's final defense to the action was that the transaction was "unconscionable" in that the broker persuaded her to sign a contract containing the second trust clause mentioned above. The law is clear that the broker is entitled to a commission if he produces a purchaser ready, willing and able to buy upon the seller's terms, but that a material deviation from

those terms will defeat the broker's claim.[1] Here the transaction offered was more advantageous to defendant than required by the sales contract because by the reduction of the interest rate on the first trust from 5% to 4½% the principal owing would be reduced more rapidly, thus enhancing the security value of the second trust to be held by defendant. Also, the signed contract did not specify the lender on the first trust but provided that the purchaser was to assume "a" first trust. It is a matter of common knowledge that refinancing of existing trusts frequently occurs in connection with real estate transactions. We find, as did the jury, that no material deviation was shown.

The issue of fraud was fairly presented to the jury in comprehensive instructions to which defendant made no objection, and at the request of defendant's counsel the court further instructed the jury that there was a fiduciary relationship between agent and seller, and also that the seller had the right to rely upon the integrity of the agent. Under familiar rules, we must accept the verdict of the jury upon such a clear issue of fact.

Defendant has also assigned as error the exclusion of certain evidence, but we deem it sufficient to say that we hold the rulings of the trial court were correct in all respects.

Affirmed.

1. Rowe v. Shilby, 86 U.S.App.D.C. 74, 179 F.2d 807; Buckner v. Tweed, D.C.Mun. App., 44 A.2d 224, affirmed 81 U.S.App. D.C. 256, 157 F.2d 211.