**CORNWELL v. HOLLANDER.**

No. 1071.

Municipal Court of Appeals
District of Columbia.

Argued June 18, 1951.

Decided June 28, 1951.

Vivian O. Hill, Washington, D. C., for appellant.

Peter G. Chaconas, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Hollander, a broker, sued for an agreed commission allegedly earned in connection with the attempted sale of Cornwell's restaurant business. At the trial the principal witnesses were the parties themselves and the prospective purchasers. The gist of plaintiff's claim as developed by the testimony was that Cornwell gave him a 90-day exclusive listing agreement to procure a purchaser for his business, that some five weeks later he did procure two purchasers who as partners signed a binding agreement to buy the business on Cornwell's terms, but that Cornwell refused to complete the deal. Cornwell defended on the grounds: (1) that the agreement between them was mutually cancelled soon after it was made; (2) that under their agreement he had the right to reject any prospective purchaser not acceptable to him and that he did reject the purchasers produced by Hollander; and (3) that the sales agreement tendered by Hollander was not in accordance with the terms of the listing agreement. The jury awarded plaintiff the full amount of his claim and defendant appeals.

Appellant says the case should have been taken from the jury and decided by the court in his favor. One of the arguments in support of this position is that plaintiff's proof did not establish that the proposed purchasers produced by him were financially able to complete the deal. We think this argument cannot be sustained. The two purchasers gave testimony from which the jury could properly have found that they had, or had available, or could have raised enough money to cover the down payment of $5000 required by the

listing agreement. It seems to us that appellant is really arguing the weight of the evidence, and this we have no right to review.

In the trial court and here appellant has strenuously argued that he should have been freed of liability because the listing contract was cancelled by mutual agreement long before Hollander came to him with the sales contract. There was a great deal of testimony on this subject by both parties. Plaintiff's denial was just as emphatic as defendant's assertion; hence it was a factual issue. The same is true of defendant's claim that it was verbally agreed that he was to have the right to refuse any purchaser who was not acceptable to him. In view of the contradictory testimony of the parties this became strictly a matter of credibility.

Appellant argues that the terms of the purchase contract tendered by the broker did not conform to the terms recited in the listing agreement. He points to a provision in the contract to the effect that the initial deposit of $1000 was to be held in escrow by plaintiff-broker. This was not a departure from the terms of the listing agreement for under both instruments the purchasers were not to have possession until $2500 was paid; the $1000 was merely an initial deposit, and Cornwell was in no way injured by having it remain in the temporary possession of the broker. Such is common practice in transactions like this. As we read the sales agreement, it conforms to the listing agreement with respect to the deposit because both provided for a total cash payment of $5000 to consummate the deal and the payment of the balance in monthly installments of $125 with interest at four per cent per annum. Referring to a provision in the sales agreement binding him to give a lease "covering the premises now used for a restaurant business, including the basement," appellant says this provision does violence to the listing agreement, in which there was no requirement that he surrender possession of the basement. Examining the two instruments together we see no real conflict between them. The listing agreement pro-

vided for a ten year transferable lease at a fixed rental, and the sales agreement merely implemented that provision by indicating that the lease was to include that part of the basement which was being used in connection with the restaurant business. There was rather lengthy testimony as to the former use of the basement, its need and intended use by the purchasers, and as to conversations concerning the matter. This testimony was marked by much conflict and disagreement, and thus presented issues which could properly have been resolved by the jury, as they apparently were, in favor of plaintiff. Appellant also says the listing card did not authorize the provision in the sales agreement that the buyers, upon making the final deposit, were to have conditional possession of the business pending the transfer of the owner's license by the Alcoholic Beverage Control Board. We think, however, that this provision conformed to the listing agreement, which recited that the sale was subject to the transfer of the beverage license, and that the seller would give possession upon signing of contract and payment of $2500 deposit. Under the agreement the owner's rights were fully protected in the event the transfer of the license was not approved and the business reverted to him. We rule that none of these alleged differences were of so substantial a nature as to amount to variances, as was the situation in Rowe v. Shilby, 86 U.S.App.D.C. 74, 179 F.2d 807. As we said in Buckner v. Tweed, D.C.Mun. App., 44 A.2d 224, 225, "a variance between the purchaser's offer and the authorized terms may be so inconsequential as to make the vendor's refusal to complete the sale capricious; and that such variance cannot deprive the agent of his commission."

Next we consider a criticism of the instructions to the jury. The judge told the jury that, "The listing agreement says that if he [the broker] brings a buyer ready, willing, and able on those terms" that he is entitled to his commission. This was not literally true, but we think the jury could not have been misled since they were given the listing agreement and took it with them into the jury room. Further, appel-

lant did not object to that part of the charge. His objection was based on the theory that there was no *implied* obligation on his part to pay a commission. He argues here that the listing agreement, though it provided for the contingencies under which the broker would be entitled to a commission, contained no provision specifically making the owner liable for non-performance and that in the absence of an express agreement to that effect the broker cannot recover. We think the law is otherwise. Of course the parties could have expressly stipulated that the owner would be liable if he failed to accept a purchase agreement conforming to the listing agreement. But it is also true that they could have stipulated the other way: that there would be no liability unless the sale was finally completed. See Dixon v. Bernstein, 86 U.S.App.D.C. 336, 182 F.2d 104. Since there was no contract provision on the subject there comes into play the general rule of law, well-settled in this jurisdiction, that when a broker "procures a purchaser willing and able to buy on the authorized terms, he becomes entitled to his compensation although the sale may not be consummated, provided the consummation is prevented by the refusal, fault, or defective title of the principal." Dotson v. Milliken, 27 App.D.C. 500, 514, affirmed 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768. The same ruling was made in Pearson v. Small, 65 App.D.C. 243, 82 F.2d 849; Tsangares v. Fugazzi, 54 App.D.C. 334, 298 F. 207; Fox v. Cohen, 34 App.D.C. 389; Buckner v. Tweed, D.C.Mun.App., 44 A.2d 224, affirmed 81 U.S.App.D.C. 256, 157 F.2d 211, certiorari denied 330 U.S. 825, 67 S.Ct. 866, 91 L.Ed. 1275. See also Dreyfuss v. Boling, D.C.Mun.App., 60 A.2d 230. The jury might well have found fault or refusal on the part of this owner, because there was testimony that he had changed his mind about selling, and that he had decided not to sell the business without the building. There was also testimony, above mentioned, that he had reserved the right to reject any purchaser not acceptable to him; but this the jury apparently did not believe.

It seems to us that at the trial most of the differences between these parties resolved themselves into factual issues, and these have been settled by the verdict of the jury.

Affirmed.