Giuseppe A. RESTIFO, Appellant,

v.

Lane PASTOR, Appellee.

No. 1891.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 18, 1956.

Decided Feb. 20, 1957.

Rehearing Denied March 1, 1957.

**534**

Robert Sheriffs Moss, Washington, D. C., for appellant.

Ewing Laporte, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Plaintiff brought an action for a real-estate broker's commission, alleging that he had procured a signed offer of a purchaser ready, willing and able to buy defendant's property on the authorized terms. From a judgment for plaintiff, defendant appeals.

In February 1955 Restifo (hereinafter called the seller) employed Pastor, a real-estate broker (hereinafter referred to as the broker), to find a purchaser for a small apartment building located in the District of Columbia. After receiving an offer, the seller furnished the following memorandum to the broker:

> "I hereby agree to accept the following:
> Full price $39,000.00
> 1st trust $20,000.00 at $150.00 @ 5½%
> 2nd trust $11,000.00 at 90.00 @ 6%
> $240.00
> Down payment, $8,000.00
> Owner to receive difference from present 1st trust to the increase in new trust, which will be $5,000.00.
> /s/ Giuseppe A. Restifo
> April 9th
> Witness
> /s/ Lane Pastor"

Shortly thereafter the broker presented to the seller a sales agreement, signed by a prospective purchaser, which provided in part as follows:

> "Total price of property Thirty-nine thousand_____
> Thirty-nine thousand _____ Dollars ($ 39000.00).
> The purchaser agrees to pay· eight thousand_____
> _____ Dollars ($ 8000.00) cash at the date of conveyance, of which sum this deposit shall be a part.
> The purchaser is to secure a first deed of trust secured on the premises of _____ Twenty thousand _____ Dollars ($ 20,000.00) due _____, 19___, bearing interest at the rate of 5½%_____ per cent per annum, payable _____

> The balance of deferred purchase money is to be secured by a second deed of trust on said property, to be paid in monthly installments of ninety _____ Dollars ($90.00) or more, including interest at the rate of 6%_____ percent per annum, each installment when so paid to be applied, first, to the payment of interest on the amount of principal remaining unpaid and the balance thereof credited to principal."

The seller refused to sign unless the provision "owner to receive difference from present 1st trust to the increase in new trust, which will be $5,000.00," specified in the original authorization, was placed in the proffered contract.

 It is basic law in this jurisdiction that a broker is entitled to his commission if he procures a purchaser ready, willing and able to buy upon the seller's terms, but the offer to buy must clearly and unequivocally meet the authorized terms.[1] Our problem, then, is to determine whether the offer to buy, absent the provision quoted above, was still such an offer as would clearly and unequivocally give the seller the rights contemplated in the original authorization, since a deviation which is trifling or inconsequential will not defeat recovery.[2] We think that the deviation here was material and fatal to the broker's claim.

The seller's terms were such as to insure him $13,000 cash at settlement, i. e., $8,000 from the buyer's personal funds, plus $5,000 more, to be obtained as follows: The seller was to place a new first trust on the property of $20,000, the proceeds of which were to be used to pay off an existing first trust of $15,000, and the balance paid to the seller. Thus, although the buyer would receive the $20,000 initially, the seller expected to get the money immediately at final settlement, leaving an $11,000 debit, which would then be secured by a second trust in that amount. The contract submitted, however, made no provision for the disposition of the proceeds of the new first trust. Accordingly, appellant argues that the buyer could keep the entire proceeds for himself and, since the contract was silent as to the amount of the

second trust, claim that it was to be in the amount of $31,000.

We do not wholly agree with this contention for it was necessary for the buyer to secure the new first trust before he could enforce any of his rights under the contract. A title company would not certify a new first trust until the existing first trust was paid off,[3] and thus to secure the new first trust the buyer would have to use part of the proceeds, or $15,000, to pay off the existing first trust. It is at this point, however, that the proffered contract does become ambiguous for it fails to state clearly who is to receive the balance of $5,000. Since the proceeds are paid initially to the buyer, he could claim the $5,000 as his own, and place the $5,000 still owing under the contract in the second trust, which, as noted previously, makes no mention of amount.

 Appellee contends that there is no uncertainty in the contract as to the disposition of the $5,000 in question, because at trial counsel for the seller, in response to an inquiry from the court, said that the seller would receive it. Appellee argues that such a statement was a judicial admission which was binding on the seller, citing Royall v. Weitzman, D.C.Mun.App. 1956, 125 A.2d 680. A judicial admission is an admission of a *fact*, which relieves the other party of the necessity of introducing evidence to establish such a fact. In the instant case, the issue before the court was one of *law*, i. e., the construction of the contract and a determination of whether the proffered contract was ambiguous.[4] Such an "admission," then, was an admission of a legal conclusion which can have no binding effect on the question of whether the

1. Rowe v. Shilby, 1950, 86 U.S.App.D.C. 74, 179 F.2d 807, 18 A.L.R.2d 373; Altman v. DeJong, D.C.Mun.App.1955, 113 A.2d 747.

2. Buckner v. Tweed, D.C.Mun.App.1945, 44 A.2d 224, affirmed 81 U.S.App.D.C. 256, 157 F.2d 211 (1946).

3. Buckner v. Tweed, supra, 81 U.S.App.D. C. at page 256, 157 F.2d at page 211.

4. Friedman v. Thomas J. Fisher & Co., D.C.Mun.App.1952, 88 A.2d 321, 323, 31 A.L.R.2d 827.

contract clearly and unequivocally conformed to the authorized terms.[5]

It is fundamental that an agent is bound to his principal by the highest degree of faith and if he should assume an antagonistic attitude or violate his duty to his principal, the latter has a right to repudiate his acts and the agent is not entitled to compensation. Here it would have been a rather simple matter for the broker, in order to promote the sale and receive his commission, to have inserted in the contract the disputed provision and have it approved by the prospective purchaser. This he refused to do although requested to do so by his principal. It is entirely possible the broker was placing his principal in the position, if he approved the contract, of selling his property but purchasing a lawsuit. The seller had the right to dictate the terms upon which he would sell. His request of the broker was not to change the original terms but merely to clarify the proffered terms. This request we think was entirely reasonable and should have been complied with. Under the tendered contract, $5,000 was for all practical purposes dangling in the air.

Since the offer to buy did not clearly and unequivocally meet the authorized terms, we conclude that the court erred in entering judgment for the broker.

Reversed with instructions to enter judgment for appellant.

5. Pitcairn v. American Refrigerator Transit Co., 8 Cir., 101 F.2d 929, 935, certiorari denied 1939, 308 U.S. 566, 60 S.Ct. 78, 84 L.Ed. 475.