Kelly GATTON, Appellant,

v.

C. M. STEPHEN and Glema Stephen, Appellees.

No. 2–57221.

Supreme Court of Iowa.

Feb. 18, 1976.
Rehearing Denied May 13, 1976.

Heslinga & Heslinga, Oskaloosa, for appellant.

Vincent E. Johnson, Montezuma, for appellees.

UHLENHOPP, Justice.

The decisive question in this appeal in an action to recover a realtor's commission is whether the realtor proved as a matter of law that he produced a buyer ready and willing to purchase on terms prescribed by the seller.

C. M. and Glema Stephen owned a farm in Poweshiek County, Iowa. They listed it for sale on a 5% commission with Kelly Gatton, a licensed realtor, "at the price of $264,000.00 for property: $10,000.00 to be paid when contract of sale is made and balances as follows: Balance on Contract with a total of $60,000 down and balance 15 years at 6% Int. or any other terms acceptable to owners."

Gatton advertised the farm and secured offers of less than $264,000 by Vander Hart Brothers, who were farmers in the area. Eventually a fellow realtor, working with Gatton, obtained an offer of $264,000 from a New Jersey prospect, subject to terms to be negotiated. In early October 1972, the parties, including Gatton's employee, worked out a proposed contract with that prospect—we will call this the New Jersey contract. The Stephens had a problem of capital gains tax. The New Jersey contract called for payment of $10,000 on execution of the contract, $20,000 by the next March 1st, $18,000 on March 1st of each of the following two years, and $10,000 on each March 1st thereafter until the balance was paid, plus 6% interest on the unpaid balance. The contract gave the prospective buyer the right to pay $20,000 additionally in the second and any succeeding year of the contract, and also the right to pay off the contract in full upon his paying the Stephens' additional capital gains tax which resulted from prepayment. This contract was acceptable to the Stephens, but the prospect rejected it because he desired to pay cash for the farm—and evidently did

not care to pay the Stephens' capital gains tax.

The Vander Harts knew the terms of the New Jersey contract. On December 11, 1972, Gatton secured from the Vander Harts a written offer of $264,000, with $10,-000 to be paid with the offer (they paid this by check delivered to Gatton), $50,000 upon delivery of a contract by March 1, 1973, "and the balance of $204,000 to be paid over the next 15 years with all unpaid balances to draw 6% annual interest commencing 3/1/73 or by Contract to be determined by sellors attorney calling for less principal payments for the sole purpose of lessening sellors tax obligation. This Contract may coincide with one prepared by sellors attorney on or about Oct. 2, 1972 to provide for above."

On December 20, 1972, the Stephens, the Vander Harts, and Gatton endeavored to negotiate a contract in the office of the Stephens' attorney. We have scrutinized these negotiations to ascertain the Vander Harts' intentions. The crux of the negotiations was the Stephens' capital gains tax. Gatton introduced strong evidence at trial that the Vander Harts stated they would buy under the terms of their offer or under the terms of the New Jersey contract. Under that contract, the buyer would pay $30,-000 initially—$10,000 down and $20,000 by March 1 following. The Vander Harts' written offer required them to pay $60,000 initially—$10,000 down and $50,000 by March 1 following. Gatton's evidence showed the Stephens demanded that the Vander Harts pay $60,000 initially and also pay the Stephens' capital gains tax resulting from such payment. Gatton's evidence also indicated the Vander Harts refused to pay that capital gains tax and the deal fell through.

On the other hand, the trier of fact could find from the evidence that the Stephens demanded the Vander Harts pay the Stephens' additional capital gains tax if the Vander Harts paid off the entire balance—a term of the New Jersey contract—and the deal fell through when the Vander Harts rejected this term saying they would not pay anybody's income tax.

After these negotiations collapsed, Gatton brought the present action against the Stephens for a commission. The parties waived a jury. The trial court adopted the Stephens' version of the facts and found for them. Gatton appealed.

The parties tried the action by ordinary proceedings and our review is on error rather than de novo. "Findings of fact in a law action, which means generally any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial evidence." Rule 344(f)(1), Rules of Civil Procedure.

■ I. A realtor's commission may be earned in any of the three ways stated in *Ducommun v. Johnson*, 252 Iowa 1192, 1196, 110 N.W.2d 271, 273: "First, by effecting a binding contract of sale under authority given to the agent to make such a contract for the principal; second, by producing a purchaser to whom a sale is in fact made; third, by producing a purchaser ready, willing and able to buy on terms specified in the agency agreement." In the third situation, if the realtor "finds a customer who is able and willing to take the property at [the stated] price, and upon the stated terms, he is entitled to compensation, whether a sale is effected or not." *Murphy v. Brown*, 252 Iowa 764, 767, 108 N.W.2d 353, 355.

Gatton did not effect a binding contract with the Vander Harts and the Stephens did not in fact sell to them; thus the first two situations set out in the *Ducommun* case do not apply. The ultimate issue therefore is whether Gatton produced a buyer ready, willing, and able to buy "on the terms specified in the agency agreement."

■ II. Preliminary to this issue is the question, what were the terms of the agency agreement? The original listing was quite general in its terms, but we think the trial court could reasonably find from the

New Jersey contract negotiations that the parties intended to and did make those general terms specific with reference to capital gains tax. Both Gatton and the Stephens were participants in those negotiations. The negotiations told Gatton about the capital gains problem and the terms in that connection which the Stephens regarded as acceptable—and the Stephens must have realized that those negotiations so told Gatton. We thus find no ground to overturn the trial court's finding that the terms of Gatton's listing are to be found in the original listing supplemented by the New Jersey negotiations and contract. See Restatement, Agency 2d, § 445, Comment *d*; 12 Am.Jur.2d Brokers § 34 at 797, § 187 at 929; 12 C.J.S. Brokers § 64 at 149.

■ III. Gatton argues the fact is that the Stephens visited a daughter in North Carolina and on return simply refused to sell on any terms. The evidence strongly indicates that this is so, but the trial court did not so find and we therefore place this argument aside. The question is whether Gatton proved as a matter of law that the Vander Harts were ready and willing to enter into a contract on the terms of the modified listing—so that the court would have had to direct a verdict for Gatton were a jury present. The trial court found as a fact that the Vander Harts were not so ready and willing. Gatton cannot prevail on this appeal unless all reasonable minds would agree from the evidence that the Vander Harts were ready and willing. The burden of proof is on Gatton. *Murphy v. Brown,* 252 Iowa 764, 108 N.W.2d 353.

The only contract term in question relates to the Vander Harts' assumption of the Stephens' capital gains tax. One or the other of two findings is possible under the evidence. The first is Gatton's claim that the Stephens demanded the Vander Harts pay $60,000 initially and also pay the Stephens' capital gains tax resulting from such payment, and that the Vander Harts refused to pay such capital gains tax.

If this finding is accepted, the Stephens demanded more than the New Jersey contract gave them. That contract did not oblige the New Jersey prospect to pay the capital gains tax on the first $60,000. The Vander Harts' written offer coincided with the New Jersey contract in this respect. It provided for principal payments and then stated, "This Contract may coincide with one prepared by sellors attorney on or about Oct. 2, 1972 [the New Jersey contract] to provide for above." Thus Gatton produced buyers willing to purchase under the modified terms of the listing, under the first possible finding.

The other possible finding is the Stephens' contention that the Vander Harts were unwilling to pay the Stephens' additional capital gains tax if the Vander Harts paid off the balance in advance. The Stephens' problem here, however, is that the Vander Harts did not ask the right to prepay the balance. Their offer did not contain a clause giving them the right to pay off the contract in advance. Had they inserted such a right in their offer, they would have had to insert a correlative duty on their part to pay the Stephens' added tax. Since the Vander Harts did not ask such a right, the Stephens' contention that the Vander Harts refused to pay the added tax on prepayment is irrelevant.

The New Jersey contract did contain a clause giving the buyer the right to prepay the balance on payment of the additional tax. Does the absence of such a clause in the Vander Hart offer mean that the Vander Harts' offer did not meet the terms of the modified listing?

■ Generally the broker must obtain an offer which complies with the terms of the listing. 12 Am.Jur.2d Brokers § 185 at 925; 12 C.J.S. Brokers § 86 at 195. An exception exists, however, when the deviation is trifling or is no less beneficial to the seller. *Buckner v. Tweed,* 81 U.S.App.D.C. 256, 157 F.2d 211, cert. den., 330 U.S. 825, 67 S.Ct. 866, 91 L.Ed. 1275, reh. den., 330 U.S. 856, 67 S.Ct. 1092, 91 L.Ed. 1297; *Stark v. Shertzer,* 77 A.2d 180 (D.C.Mun.Ct.App.);

*Herring v. Fisher,* 110 Cal.App.2d 322, 242 P.2d 963; *Spears v. Carter,* 224 Mo.App. 726, 24 S.W.2d 717. See also *Showers v. Rober,* 92 Cal.App. 171, 267 P. 884. Here the prepayment clause in the New Jersey contract gave the *buyer* a right; the *Stephens* could not compel the buyer to prepay. Without the clause, the Stephens were in as good a position as with it: they could refuse prepayment except upon payment by the buyers of the added tax or upon performance of any other lawful condition.

Had the Vander Harts made an offer with a clause giving them a conditional prepayment right, they could have, on performance of the condition, compelled the Stephens to take prepayment. Without the clause, the Vander Harts could only prepay, if at all, on such conditions as the Stephens imposed. Their offer without the clause was no less beneficial to the Stephens than the New Jersey contract. On this second possible finding, therefore, the case comes within the exception and Gatton produced an offer which entitled him to a commission.

Thus under either party's version of the facts, Gatton established his case. We return the case to district court for entry of judgment in Gatton's favor against the Stephens for $13,200, interest, and costs.

Reversed and remanded.